IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

CHASE EDWARD LUCAS,

     Plaintiff,

v.                                                                    No. 1:18-cv-01211-JDB-cgc

ALLEN CHALK et al.,

     Defendants.

---

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
(D.E. 57, D.E. 71)

---

Before the Court is the motion of Defendants, Allen Chalk, Dina Kulenovic, and Corizon Health, Inc. (collectively, "Corizon Defendants"), for summary judgment, (Docket Entries ("D.E.") 71–73, 96), as well as Defendant Robert Collette's motion for summary judgment, (D.E. 57), all pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Plaintiff, Chase Edward Lucas, submitted a response to the Corizon Defendants' motion, (D.E. 101), but did not respond to Collette's motion and the deadline for doing so has passed. (*See* D.E. 74 at PageID 916; D.E. 80 at PageID 937.) As such, these motions are ripe for disposition.

**PROCEDURAL HISTORY**

On October 9, 2018, Lucas filed a *pro se* complaint against Chalk, pursuant to 42 U.S.C. § 1983, claiming that Defendant violated Plaintiff's Eighth Amendment rights.[1] (D.E. 1.) As required by 28 U.S.C. § 1915A, the Court[2] screened Lucas's complaint under Fed. R. Civ. P.

---

[1] Plaintiff's initial complaint was filed under oath on a standardized questionnaire form for inmates asserting civil rights violations under 42 U.S.C. § 1983.

[2] This case was initially assigned to United States District Judge James D. Todd.

12(b)(6) and dismissed it *sua sponte* for failure to state a claim.  (D.E. 7.)  The Court also denied Lucas leave to amend his complaint.  (*Id.*)  On appeal, the Sixth Circuit agreed that the complaint failed to state a claim but vacated the dismissal and remanded the case with instructions to allow Plaintiff to amend.[3]  (D.E. 14.)  On October 1, 2019, Lucas, now assisted by counsel, filed an amended complaint asserting violations of the Eighth Amendment for deliberate indifference to his medical needs and to his need for safety and protection, the First Amendment for retaliation, and the Fourteenth Amendment's equal protection clause.[4]  (D.E. 17 at PageID 76–77.)  Subsequently, the case was reassigned to the undersigned.  (D.E. 20.)

On November 25, 2019, Corizon Defendants moved for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c), asserting that Plaintiff had failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  (D.E. 47.)  The Court converted Defendants' motion into one for summary judgment, as Lucas's failure to exhaust was not apparent on the face of his amended pleading, and ordered the parties to engage in limited discovery on the issue of exhaustion.  (D.E. 63.)  Collette also submitted a motion for summary judgment based on the exhaustion issue.  (D.E. 57.)

## BACKGROUND

In July 2016, Lucas was incarcerated in the Tennessee Department of Correction's ("TDOC") Bledsoe County Correctional Complex in east Tennessee.  (D.E. 17 at PageID 42.)

---

[3] Neither the initial screening of Plaintiff's complaint nor the subsequent review by the Sixth Circuit addressed Plaintiff's admission that he had not "presented these facts to the prison authorities through the state grievance procedure," as required by TDOC Policy 501.01 and the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  (*See* D.E. 1 at PageID 4.)

[4] Plaintiff's amended pleading added Robert Collette, CoreCivic, Inc., Corizon Health, Inc., Tennessee Department of Corrections Commissioner Tony Parker, Warden Arvil Chapman, Warden Kevin Genovese, Warden Shawn Phillips, Kent Colburn, Dina Kulenovic, and Hardeman County, Tennessee, as defendants.  (D.E. 17.)  Lucas also asserted claims against John and Jane Does and XYZ Corporations.

Since then, he has been transferred to five different TDOC prisons.  The inmate was first moved to Hardeman County Correctional Facility ("HCCF") in west Tennessee, where he was confined from September 5, 2016, to October 12, 2017.  (*Id.* at PageID 43.)  On October 12, Plaintiff was relocated to South Central Correctional Facility ("SCCF") in middle Tennessee, where he remained until May 3, 2018.  (*Id.* at PageID 45.)  TDOC then transferred Lucas to Whiteville Correctional Facility ("WCF") in Whiteville, Tennessee, where he was confined from May 3, 2018, to January 16, 2019.  (*Id.* at PageID 47.)  In January 2019, he was transported to Turney Center Industrial Complex ("Turney") in middle Tennessee.  (*Id.* at PageID 55.)  Lucas was incarcerated there for about two and a half months before he was relocated to Northwest Correctional Complex ("NWCC") on April 3, 2019, where he is currently housed.  (*Id.* at PageID 60–61.)

Plaintiff's claims against Corizon, Chalk, Kulenovic, and Collette arise from incidents that occurred while he was at WCF and Turney, from May 2018 to April 2019.  While at WCF, Chalk was initially employed by CoreCivic as a mental health coordinator.  He later worked at the TDOC's Turney facility for Corizon as a mental health care provider.[5]  During Plaintiff's time at Turney, Kulenovic was employed by Corizon as the chief supervisor of mental health services.  Collette also worked at WCF as a security captain.

As to Chalk, Lucas alleges that, in late July 2018, while at WCF, he "complained [to Chalk] of being 'harassed as bisexual.'"  (*Id.* at PageID 48.)  In response, this Defendant purportedly stated that Plaintiff "did not need treatment or counseling arising from his prior rapes because they were 'unsubstantiated,' and [Plaintiff] 'probably enjoyed them because he is bisexual.'"  (*Id.* at

---

[5] Corizon is a company that provides mental health services to inmates at Bledsoe, Turney, and NWCC.  Plaintiff asserts no direct claim against Corizon, but rather alleges that it is indirectly liable for the actions of Chalk and Kulenovic under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

PageID 48–49.)  On February 4, 2019, while confined in Turney, Plaintiff asserts that he "asked to see Dr. Chalk," who never responded or made a note of his request.  (*Id.* at PageID 56.)  In sum, Lucas maintains that Chalk refused to provide any mental health services to him at WCF and Turney.  Plaintiff also asserts that Chalk made retaliatory comments to him in March 2019 regarding his underlying lawsuit, and that his case against Chalk was one reason why the Defendant refused to provide mental health services.  (*Id.* at PageID 59.)

As for Kulenovic, Plaintiff alleges that she failed to provide and adequately supervise his mental health care while incarcerated in Turney.  (*Id.* at PageID 60, 73.)  He also complains of Kulenovic's use of four-point leather straps to restrain him in March 2019.  (*Id.* at PageID 58.)

Regarding Collette, Lucas states that this Defendant's decision to place him in a cell with "an active gang member" who was "a known homophobic and white supremacist" lead to Plaintiff being raped at WCF on December 25, 2019.  (*Id.* at PageID 50.)  According to the inmate, Collette told him that if he did not "move to the cellblock," then Collette "would 'mace' him and put him in segregation."  (*Id.*)

In their lack-of-exhaustion motion, Corizon Defendants contend that Lucas did not pursue his claims in accordance with the TDOC's grievance procedures as provided in TDOC Policy 501.01.  (D.E. 72 at PageID 850–54.)  They also assert that any attempts by Plaintiff to verbalize his complaints were insufficient to exhaust his administrative remedies, as the TDOC's grievance procedure defines a "grievance" as a "written complaint" that must be submitted on form CR-1394.  (D.E. 96 at PageID 1133–34.)  Further, since Lucas made no affirmative efforts to exhaust his claims in compliance with TDOC procedures, Defendants aver that he cannot now argue that his administrative remedies were unavailable.  (D.E. 72 at PageID 857.)  In support of their position, Defendants point to two admissions by Plaintiff—one in his original sworn complaint,

4

and the second in his response to their Rule 36 requests for admission—to evidence that he did not file a grievance on form CR-1394 concerning his allegations against Defendants. (D.E. 72 at PageID 847–48, 853–54 (citing D.E. 1 at PageID 4); D.E. 96 at PageID 1133–34; D.E. 96-4 at PageID 1177–78.) Defendants also submitted a copy of TDOC Policy 501.01 (Inmate Grievance Procedures), the TDOC's 2018 inmate handbook, an October 2018 grievance filed by Lucas at WCF, and a list of grievances the inmate filed as recorded in the TDOC's computerized database—the Tennessee Offender Management Information System ("TOMIS"). (D.E. 72-1; 72-3; 72-4; 72-5; )

In response, Plaintiff argues that he attempted to exhaust his administrative remedies but that they were unavailable. (D.E. 101 at PageID 1248.) Lucas points to a May 18, 2017 grievance that he filed while incarcerated in HCCF concerning the prison's failure to provide medical treatment. (D.E. 101-6 at PageID 1295–96.) He contends that the responses he received from HCCF's grievance chairperson and warden "shows a blanket refusal of inmate grievances about health care." (D.E. 101 at PageID 1251.) Thus, according to Plaintiff, there is a question of fact as to whether remedies for health-care grievances were actually available. Further, the inmate insists that summary judgment is improper because he has not received all of his requested discovery, such as any records relating to Prison Rape Elimination Act ("PREA") complaints and investigations. (*Id.* at PageID 1255–59.) Therefore, he was unable to reply to Defendants' motion and statement of material facts.[6]  (*Id.* at PageID 1259–60.)

---

[6] Plaintiff also submitted evidence of two rapes that he allegedly endured in June 2019 and in June 2020 while incarcerated at NWCC, along with a CR-1394 grievance that his attorneys filed on his behalf on June 19, 2020. (D.E. 101-8; D.E. 101-10.) The Court notes that neither of these exhibits are relevant to the underlying motions, as the 2019 incident did not involve these Defendants, and the June 2020 grievance was submitted after Lucas filed his original and amended complaints. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("[A] prisoner may not exhaust administrative remedies during the pendency of the federal suit.").

Collette's similar motion mirrors that of the Corizon Defendants in that he avers that Lucas submitted only one grievance while incarcerated in WCF, and that charge related to his job in the kitchen's prison—it did not involve Collette or the December 2019 incident.  (D.E. 57-1 at PageID 459–60.)  Because Lucas did not file a grievance on form CR-1394, Defendant also contends that Plaintiff did not exhaust his administrative remedies as to the inmate's claim against him.  (*Id.* at PageID 463–65.)

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party "has the initial burden of showing the absence of a genuine dispute as to a material fact."  *Automated Solutions Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 520 (6th Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "A dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"  *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013) (quoting *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 551 (6th Cir. 2002)).  Conversely, "[t]here is no genuine issue for trial where the record 'taken as a whole could not lead a rational trier of fact to find for the non-moving party.'"  *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013) (quoting *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  A court's function at the summary judgment stage is not to "weigh the evidence and determine the truth of the matter"; rather, it is "to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 748 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 255) ("Credibility determinations . . . and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

If the motion is properly supported, "the opposing party must go beyond the contents of its pleadings to set forth specific facts that indicate the existence of an issue to be litigated." *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008) (citation omitted). Thus, "in order to defeat summary judgment, the party opposing the motion must present affirmative evidence to support [his] position; a mere 'scintilla of evidence' is insufficient." *Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) (quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003)). Although a court does not weigh the evidence at this stage, it "must view all evidence and draw any reasonable inferences therefrom in favor of the nonmoving party." *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 426 (6th Cir. 2014) (citing *Matsushita*, 475 U.S. at 587). "[C]onclusory allegations, speculation, and unsubstantiated assertions," however, "are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment." *Jones*, 677 F. App'x at 282 (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

## ANALYSIS

Under the Prison Litigation Reform Act ("PLRA"), a prisoner must exhaust all available administrative remedies before filing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 88–91 (2006); 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted."). The PLRA's exhaustion requirement is mandatory and "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). "The point of the PLRA exhaustion requirement is to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (citing *Woodford*, 548 U.S. at 94–95; *Porter v.*

*Nussle*, 534 U.S. 516, 525 (2002)); *see also Cook v. Caruso*, 531 F. App'x 554, 561 (6th Cir. 2013) (citation omitted) (alteration in original) ("Requiring exhaustion serves two purposes.  First, it gives an agency 'an opportunity to correct its own mistakes with respect to the program it administers before it is haled into federal court,' and it discourages 'disregard of [the agency's] procedures.'  Second, exhaustion promotes efficiency.").

Additionally, "[t]he PLRA has been interpreted to require 'proper exhaustion,' meaning that a prisoner must 'complete the administrative review process in accordance with the applicable procedural rules,' . . . [as] defined not by the PLRA, but by the prison grievance process itself." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015) (alterations in original) (quoting *Jones*, 549 U.S. at 218); *Cook*, 531 F. App'x at 562 (quoting *Woodford*, 548 U.S. at 90–91) ("Proper exhaustion of administrative remedies requires 'compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.'").  Failure to exhaust administrative remedies is an affirmative defense on which the defendant bears the burden of proof.  *Jones*, 549 U.S. at 216.

## A.  TDOC Grievance Procedure

The State of Tennessee has authorized the TDOC to establish the grievance procedures available for inmates pursuant to 42 U.S.C. § 1997e.  Tenn. Code Ann. § 41-21-817(a).  The remedy provided by the TDOC's grievance procedure "is the exclusive administrative remedy available to an inmate for a claim for relief that arises while the inmate is housed in a facility operated by the department."  *Id.*  The TDOC has adopted Policy 501.01 as the exclusive administrative remedy for TDOC inmates.  (D.E. 73 at PageID 897.)

Policy 501.01 establishes a three-level review process for inmate grievances. (D.E. 72-1 at PageID 862–63.) A "grievance" is defined as "[a] written complaint concerning the substance or application of a written or unwritten policy or practice, any single behavior or action toward an inmate by staff or other inmates, or any condition or incident within the Department or institution which personal[ly] affects the inmate complainant." (*Id.* at PageID 861.) There are three types of grievances identified in Policy 501.01—(1) Title VI grievances, which allege discrimination on the basis of race, color, or national origin; (2) PREA grievances, which allege sexual abuse; and (3) any other grievance. (*See id.* at PageID 862–66.) Irrespective of the type of grievance, all claims "must be filed utilizing [form] CR-1394." (*Id.* at PageID 862.)

It is undisputed that Lucas's allegations against Defendants fall under the third category of grievances. (*See* D.E. 73 at PageID 898–99.) For this type of complaint, Plaintiff was required to submit it on form CR-1394 "within seven calendar days of the occurrence or the most recent occurrences giving rise to the grievance."[7] (*Id.*) Once filed, the inmate's supervisor has five working days to provide a proposed response to the grievance chairperson, who in turn has seven working days to review the supervisor's answer and notify the inmate of the decision. (*Id.* at PageID 863.) If dissatisfied with the determination, the prisoner then has five calendar days to appeal the Level I response to the grievance committee and warden/superintendent (i.e., Level II). (*Id.*)

At Level II, a hearing must be held within five working days of the appeal. (*Id.*) The committee then has five working days after the hearing to submit a proposed response to the warden. (*Id.*) The warden has seven working days to review the grievance and forward his decision to the chairperson. (*Id.*) If the warden denies the relief requested, the inmate may appeal

---

[7] Title VI grievances are subject to a 180-day filing deadline, and PREA grievances may be submitted "at any time." (D.E. 72-1 at PageID 865–66.)

the Level II response, within five calendar days of receipt of that response, to the Deputy Commissioner of Operations. (*Id.*) The Deputy Commissioner has twenty-five working days to provide the Level III response, which is final and is not subject to further appeal. (*Id.*)

"If a time limit expires at any stage of the process without the required response, the grievant may move the grievance to the next stage of the process, unless the inmate agrees in writing to a fixed extension of the time limit for response." (*Id.* at PageID 864.) Further, "[i]f the chairperson determines a matter to be non-grievable," the prisoner may appeal that decision as outlined above. (*Id.*)

B. *Corizon Defendants*

As a preliminary matter, the Court notes that Lucas's attempt to avoid summary judgment based on his discovery argument is without merit, as he filed no motion to compel, for an extension of the discovery deadline, or for a second extension of time to respond to Defendants' motion.[8] Further, since Plaintiff failed to respond to Defendants' statement of material facts, the Court takes those assertions as undisputed for purposes of summary judgment. Local Rule 65.1(d).

Lucas's claims against Corizon Defendants concern their alleged refusals to provide mental health treatment while he was incarcerated at WCF and Turney. As proof that the prisoner failed to exhaust, Defendants point to Plaintiff's admissions that he did not file a grievance and the TDOC's TOMIS report of all the grievances Plaintiff filed as of November 12, 2019 (i.e., before he amended his complaint). (D.E. 96 at PageID 1133–34; D.E. 72-5 at PageID 895; D.E. 96-4 at PageID 1177–78.)

_____

[8] Notably, Defendants filed a motion to compel during the discovery period, which was denied since their request was unrelated to the issue of exhaustion. (*See* D.E. 95.)

Plaintiff's first admission is found in his original complaint—which he filed under oath—in which he responded "No" when asked whether he had "presented these facts to the prison authorities through the state grievance procedure." (D.E. 1 at PageID 4.) When asked to explain why he had not done so, he stated that the grievance procedure is "bias" and that the inmate handbook "states that the use of the TDOC [grievance] procedure is not a prerequisite to the pursuit of other remedies." (*Id.*) As Defendants point out, however, the handbook contains no such statement. (*See* D.E. 72-3 at PageID 888–89.) Further, under the PLRA, "exhaustion is required even if the prisoner subjectively believes the remedy is not available; even when the state cannot grant the particular relief requested; and 'even where [the prisoner] believe[s] the procedure to be ineffectual or futile . . . .'" *Napier v. Laurel Cty.*, 636 F.3d 218, 222 (6th Cir. 2011) (citations omitted). Lucas's second concession appears in his response to Defendants' Rule 36 requests for admission, in which he conceded that "his grievance was not submitted on TDOC Form CR-1394." (D.E. 96-4 at PageID 1177–78.)

The TOMIS report also confirms that Plaintiff failed to exhaust, as it reflects that he filed no grievances while incarcerated in Turney and only one at WCF.[9] (D.E. 72-5 at PageID 895.) Lucas's WCF grievance, filed on October 30, 2019, related to his job in the prison's kitchen. (*See* D.E. 72-4 at PageID 891–93.) It did not address any of the allegations in his amended complaint, nor did it name Chalk or Kulenovic.

---

[9] Plaintiff submitted three grievances at HCCF: one on January 5, 2017, relating to "food service" (i.e., his job in the kitchen's prison); a second on April 28, 2017, concerning the counseling staff; and a third on May 18, 2017, which requested to be seen for medical treatment. He presented two grievances at SCCF on November 30, 2017, and March 8, 2018, respectively. The first related to "property," and the second dealt with a "laundry" complaint. The last grievance Lucas filed before he amended his pleading involved a "property" claim filed at NWCC on June 25, 2019. (*See* D.E. 72-5 at PageID 895.)

As noted, the TDOC's grievance procedure requires all complaints to be filed utilizing form CR-1394. And "proper exhaustion" under the PLRA necessitates inmates to "complete the administrative review process *in accordance with the applicable procedural rules*" as provided in the prison's grievance policy. *Lee*, 789 F.3d at 677 (emphasis added) (quoting *Jones*, 549 U.S. at 218); *Woodford*, 548 U.S. at 88. The record in this case clearly demonstrates that Lucas made no affirmative effort to comply with the TDOC's grievance procedures relating to the occurrences involving Chalk or Kulenovic. Since Lucas did not follow the TDOC's procedural rules, he failed to properly exhaust his administrative remedies. *Russ v. TDOC*, No. 19-5656, 2020 WL 3317753, at *2 (6th Cir. Jan. 15, 2020) (concluding that the prisoner failed to exhaust since he did not pursue his claim through Level III as required by the TDOC's grievance procedures).

Notwithstanding his non-compliance, Plaintiff maintains that exhaustion should be excused because he attempted to exhaust but his administrative remedy was unavailable. (D.E. 101 at PageID 1250–52.) Indeed, "[a] prisoner's lack of compliance may be excused if the administrative remedies are not available," however, the Sixth Circuit requires inmates to make "affirmative efforts to comply with the administrative procedures *before* analyzing whether the facility rendered these remedies unavailable." *Lee*, 789 F.3d at 677 (emphasis added) (quoting *Napier*, 636 F.3d at 223). If a prisoner "makes affirmative efforts to comply but does not succeed," the court must determine "whether those efforts to exhaust were sufficient under the circumstances." *Id.* (quoting *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)) (internal quotation marks omitted).

The only evidence Lucas points to in support of his position is a May 18, 2017 grievance that he submitted while imprisoned in HCCF.[10] (*See* D.E. 101-6 at PageID 1295–96.) In that

---

[10] Although Plaintiff continues to maintain that he "made numerous complaints to mental health staff about PREA violations and about his need for mental health services," he offered no

complaint, Plaintiff alleged that he was "being refused medical treatment," that he had "been filing out sick calls for over a month," and that he had "spoke to Mr. Bolden[,] the Health Admin.," but had yet to be seen. (D.E. 101-6 at PageID 1295.) His requested relief was to "be seen for [his] sick calls" and to have his "medical issues taken care of." (*Id.*) The grievance chairperson denied Plaintiff's complaint as inappropriate for the grievance process. (*Id.* (citing TDOC Policy 501.01(VI)(H)(8) (diagnoses by medical professionals)).) Lucas appealed the decision to the warden, who agreed with the chairperson's determination. (*Id.* at PageID 1295–96.) The inmate elected not to appeal the warden's decision further because, according to Plaintiff, these two findings by HCCF prison officials reflected a "blanket refusal of inmate grievances about health care" and, therefore, excused his lack of affirmative efforts to exhaust while incarcerated in Turney and WCF. (*Id.* at PageID 1296; D.E. 101 at PageID 1251.) The Court disagrees.

The responses Lucas received to his May 2017 grievance do not demonstrate that his administrative remedies were unavailable, but simply confirms that he failed to comply with the TDOC's procedural requirements. First, "[a]n inmate exhausts a claim *by taking advantage of each step* the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits[.]'" *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (emphasis added) (quoting *Woodford*, 548 U.S. at 95). "[The] TDOC's grievance policy provides for a three-level review process, *and all three levels must be completed for*

---

evidence to support his contention—not even his sworn declaration. Additionally, Defendants have submitted uncontroverted evidence showing that verbal complaints are insufficient to exhaust his administrative remedies, as the TDOC's grievance procedure requires all grievances—including PREA complaints—to be in writing and filed utilizing form CR-1394. (*See* D.E. 72-1 at PageID 861–63); *see also Shepard v. Wilkinson*, 27 F. App'x 526, 527 (6th Cir. 2001) ("While [plaintiff] asserts that he has raised his complaints in numerous letters to prison and public officials, a prisoner must utilize the formal grievance process provided by the state; he cannot comply with the requirements of § 1997e(a) by informally presenting his claims.").

*exhaustion to occur.*"  *Russ*, 2020 WL 3317753, at *2 (emphasis added) (citing *Lee*, 789 F.3d at

677).  Plaintiff completed only two steps of the prison's grievance procedure and then stopped—

that is, he chose not to pursue his claim to Level III of the review process.  Consequently, the

inmate did not exhaust his May 2017 grievance.  *See id.* (concluding that the prisoner failed to

exhaust one of his two claims as he appealed only one through Level III of the TDOC's grievance

process).

Second, because Lucas abandoned the grievance process before the final level of review,

he cannot now argue that his administrative remedy was unavailable.  *See Russ v. CoreCivic, Inc.*,

2019 WL 2296813, at *2 (M.D. Tenn. May 29, 2019), *reversed on other grounds*, 2020 WL

3317753 (6th Cir. Jan. 15, 2020), ("When an inmate only partially exhausts a claim, does not

appeal the denial of a grievance, or abandons the process, dismissal is warranted."); *Washington*

*v. Hindsley*, No. 3:14-CV-01465, 2014 WL 6818965, at *3 (M.D. Tenn. Dec. 2, 2014) (citations

omitted) ("The PLRA requires the full round of available remedies to be exhausted before an

inmate files his lawsuit, and an inmate is not permitted to abandon the grievance process prior to

filing his lawsuit.").  Put differently, the fact that Plaintiff received unfavorable responses at the

first two steps of the grievance process does not excuse his decision to wholly abandon the review

process going forward—especially when the prison's grievance procedure was functioning as

provided in TDOC Policy 501.01.  *See Lynn v. Melton*, 2017 WL 11408171, at *2 (6th Cir. Mar.

30, 2017) ("[Plaintiff] appears to have decided that the grievance procedure was functionally

unavailable, despite another response that he had received to a grievance reminding him that those

procedures were, in fact, available."); *see also* TDOC Policy 501.01(VI)(L) (providing that

inmates may appeal a determination that a matter is non-grievable).  And by not pursuing his May

2017 grievance to the Deputy Commissioner of Operations, he deprived that official of a fair

opportunity to review and correct any error in his subordinates' responses—which is one of the chief purposes of the PLRA.[11]  *Woodford*, 548 U.S. at 94; *accord Reed-Bey*, 603 F.3d at 325 (noting that, "above all," the goal of the PLRA's exhaustion requirement is "to give state officials a realistic opportunity to correct their own mistakes before federal courts intervene").  Moreover, that Lucas was able to appeal the warden's response but chose not to lends additional support to the conclusion that his efforts to exhaust were insufficient under the circumstances.

Further, it is well settled that there is no futility exception to the PLRA's exhaustion requirement.  *See Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) (declining to "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise," and holding "that Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues"); *Napier*, 636 F.3d at 222 (noting that exhaustion is required "even where [the prisoners] believe the procedure to be ineffectual or futile").  Thus, Plaintiff cannot rely on the responses he received from HCCF's grievance chairperson and warden as evidence that the TDOC's Deputy Commissioner and prison officials at Turney and WCF would simply have rubber-stamped those responses.[12]

---

[11] Notably, Defendants maintain that a grievance alleging a failure to provide mental health treatment was and still is an appropriate grievance, as it does not complain of a diagnosis by a medical professional.  Implicit in Defendants' position is that the HCCF chairperson and warden may have misinterpreted Lucas's grievance.  This point underscores the significance of Plaintiff's decision not to appeal his May 2017 grievance to the Deputy Commissioner.

[12] The Court further notes that Plaintiff's reliance on *Bruce v. Corr. Med. Servs., Inc.*, 389 F. App'x 462 (6th Cir. 2010), *Rancher v. Franklin Cty.*, 122 F. App'x 240 (6th Cir. 2005), and *Does 8-10 v. Snyder*, 945 F.3d 951 (6th Cir. 2019), is misplaced.  Unlike in *Bruce*, where a prison worker thwarted the inmate's initial attempt to file a grievance requesting medical treatment, 389 F. App'x at 467, Lucas was not prevented from filing his grievance *or* appealing it.  And unlike *Rancher*, in which the jail had no formal or stated grievance procedure, 122 F. App'x at 241–42, the prisons here each follow the TDOC's grievance procedures (i.e., TDOC Policy 501.01).  Further, the plaintiff in *Rancher* submitted evidence of other inmates' requests for medical treatment that were deemed non-grievable—not just one grievance as Plaintiff does here.  Moreover, the facts of *Snyder* are wholly distinguishable from those in this case, as the Michigan

Lastly, the Court rejects Plaintiff's argument that there is a question of fact as to whether grievances alleging a failure to provide health care are "inappropriate" for the TDOC's grievance procedure (i.e., non-grievable).  The Sixth Circuit has held that "when a reasonable policy is in place, but is silent or vague in a particular circumstance, courts must look to see whether the prisoner has attempted to satisfy the requirements of the policy."  *Napier*, 636 F.3d at 223; *see also id.* at 224 ("Faced with a policy that was not clearly unavailable, the only way to determine if the process was available, or futile, was to try.  Here, a process existed, and therefore . . . 'compliance with those rules . . . is required.'").  Therefore, irrespective of any ambiguity in the prison's grievance policy, Lucas was still required to make affirmative efforts to complete the administrative review process as outlined in the TDOC's grievance procedures, which requires inmates to complete three levels of review to exhaust their claims.

In sum, the Court concludes that Defendants have met their burden of showing that there is no genuine dispute of material fact as to Plaintiff's lack of affirmative efforts to comply with the TDOC's grievance procedures, and that Plaintiff has failed to submit "significant probative evidence" to rebut Defendants' proof.  *Napier*, 636 F.3d at 225.[13]

---

Department of Corrections' grievance policy at issue there was full of contradictory instructions regarding how and when an inmate could appeal his grievance, the prison officials thwarted the plaintiff's ability to appeal his grievance by refusing to provide him an appeals form, and the prison had a completely different process for filing PREA grievances.  See 945 F.3d at 963–66.  None of those issues are present in this case.

[13] According to Sixth Circuit precedent, there is "no reason to proceed to the question of unavailability" when the plaintiff fails to show that there is genuine dispute as to whether he made affirmative efforts to exhaust.  *Lynn*, 2017 WL 11408171, at *2; *Napier*, 636 F.3d at 223.  Therefore, the Court declines to address the parties' arguments on the issue of unavailability.

### C.  *Defendant Collette*

In support of his motion for summary judgment, Defendant relies on the declaration of Denita Jones, the grievance chairperson at WCF, a copy of the only grievance Lucas filed while incarcerated in WCF, and his statement of material facts,[14] as proof that the inmate did not exhaust his claim against him.  Specifically, Collette points to Jones's sworn statement in which she declared that she was familiar with the TDOC's grievance system, outlined the TDOC's grievance process, and stated that Plaintiff had submitted just one grievance at WCF on October 30, 2018, which related to his job in the prison's kitchen.  (D.E. 57-3 at PageID 472–74.)  Jones also provided that, based on her review of the TOMIS database, Lucas did not file any other grievance concerning Defendant or the December 24, 2018 occurrence.  (*Id.* at PageID 474)  Jones further confirmed that Plaintiff was confined in WCF from May 3, 2018, to January 16, 2019.  (*Id.*)

Since Plaintiff did not file, or even attempt to file, a grievance on form CR-1394 relating to Collette within seven days of the December 2018 incident, this Defendant contends that Plaintiff failed to exhaust this claim as he did not comply with the prison's grievance procedures.  (D.E. 57-1 at PageID 463–65.)  The Court finds that Defendant has offered sufficient proof to show that Lucas did not "complete the administrative review process in accordance with the applicable procedural rules" as required to exhaust his claim under the TDOC's grievance procedure.  *Jones*, 549 U.S. at 218; *Russ*, 2020 WL 3317753, at *2.

"To establish that he has exhausted his administrative remedies, Plaintiff must show that he presented his grievance(s) 'through one complete round' of the established grievance process." *Thorne v. S. Cent. Corr. Facility*, 2015 WL 1190159, at *4 (M.D. Tenn. Mar. 13, 2015) (quoting *Thomas v. Woolum*, 337 F.3d 720, 733 (6th Cir. 2003), *abrogated on other grounds*, *Woodford*,

---

[14] Since Plaintiff did not respond to Collette's statement of material facts, the Court takes those assertions as undisputed for the purposes of Defendant's motion.  Local Rule 65.1(d).

548 U.S. 81). Because Lucas did not respond to Collette's motion or statement of material facts, the Court finds that Plaintiff has failed to raise a genuine dispute of fact as to whether he exhausted his administrative remedies. Accordingly, the Court concludes that Defendant is entitled to summary judgment.

## CONCLUSION

For the reasons provided above, the Court GRANTS the Corizon Defendants' motion for summary judgment, (D.E. 71), and Collette's motion for summary judgment, (D.E. 57).[15] Since the dismissal of Lucas's claims against these Defendants is based on his failure to satisfy the PLRA's exhaustion requirement, his claims against Chalk, Kulenovic, Corizon, and Collette are DISMISSED without prejudice. *See Russ*, 2020 WL 3317753, at *3 (citations omitted) ("Under the PLRA, the appropriate way to dispose of unexhausted claims is to dismiss them without prejudice.").

IT IS SO ORDERED this 25th day of August 2020.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[15] The Court also DENIES AS MOOT the Defendants' objections to the magistrate judge's orders, (D.E. 76; D.E. 85; D.E. 88), and DIRECTS the Clerk of Court to terminate Docket Entries 47 and 96.