IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

CHASE EDWARD LUCAS,

      Plaintiff,

      v.                                   No. 1:18-cv-1211-JDB-cge

ALLEN CHALK; ROBERT COLLETTE;
CORECIVIC, INC.; CORIZON, INC.;
TONY PARKER; ARVIL CHAPMAN;
KEVIN GENOVESE; SHAWN PHILLIPS;
KENT A. COLBURN; DINA KULENOVIK;
HARDEMAN COUNTY, TENNESSEE;
JOHN and JANE DOES; and
XYZ CORPORATIONS,

      Defendants.

---

### ORDER GRANTING DEFENDANTS ARVIL CHAPMAN, HARDEMAN COUNTY, AND CORECIVIC'S MOTION TO DISMISS

---

Before the Court is the motion of Defendants, Arvil Chapman, Hardeman County, Tennessee, and CoreCivic, to dismiss the claims against them by Plaintiff, Chase Edward Lucas, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure ("Fed. R. Civ. P."). (Docket Entry ("D.E.") 50.)  Lucas submitted a response, (D.E. 54), to which Defendants replied, (D.E. 55). Accordingly, this matter is ripe for disposition.

### BACKGROUND

On October 9, 2018, Lucas, a Tennessee state inmate at the Whiteville Correctional Facility ("WCF"), filed a pro se complaint against Defendant, Allen Chalk, in the United States District Court for the Middle District of Tennessee alleging violations of his civil rights pursuant to 42 U.S.C. Section 1983. (D.E. 1.) Specifically, Plaintiff asserted violations of the Eighth Amendment to the United States Constitution against Chalk, the Mental Health Coordinator at WCF, regarding

his handling of Plaintiff's reports that he was raped during his incarceration. *Id.* Plaintiff's complaint was subsequently transferred to this Court. (D.E. 4, 5.)

On October 30, 2018, this Court dismissed Plaintiff's complaint and certified that any appeal would not be taken in good faith. (D.E. 7.) Chase appealed the decision to the United States Court of Appeals for the Sixth Circuit which, on August 19, 2019, vacated the dismissal and remanded with instructions to grant Plaintiff leave to amend. (D.E. 14, 15.) On September 10, 2019, this Court ordered the re-opening of the case and granted Plaintiff leave to file an amended complaint. (D.E. 16.) On October 1, 2019, the inmate, through counsel, filed his amended complaint, which is now the operative pleading in this case. (D.E. 17.)

The amended complaint sets forth a much broader scope of deliberate indifference to his safety and his physical and mental health over the period of his incarceration at six different institutions within the Tennessee prison system—the Bledsoe County Correctional Complex ("BCCC"); the Hardeman County Correctional Facility ("HCCF"); the South Central Correctional Facility ("SCCF"); WCF; Turney Center Industrial Complex ("Turney"); and, Northwest Correctional Complex ("Northwest").[1] (D.E. 17.) Specifically, under Section 1983, Plaintiff raises the following causes of action: (1) deliberate indifference to his serious health needs in violation of the Eighth Amendment; (2) deliberate indifference to his need for safety and protection in violation of the Eighth Amendment; (3) violation of his right to equal protection under the law in violation of the Fourteenth Amendment; and, (4) retaliation under the First Amendment. (D.E. 17 at PageID 76-77.)

---

[1] Since the filing of the amended complaint, Plaintiff has informed the Court that he was incarcerated briefly at Trousdale Turner Correctional Center ("TTCC") in 2016 (between his incarcerations at Bledsoe and Hardeman County), increasing the number of Tennessee prisons where he has been an inmate to seven. (D.E. 54, PAGEID 419, Footnote 1.) Plaintiff has not, however, asserted any claims against TTCC or added them as a defendant in this case.

As to the specific allegations that are addressed in Defendants' motion to dismiss, there is some dispute between the Defendants and Plaintiff regarding which of the contentions in the amended complaint are directed towards Defendants Chapman, CoreCivic, and Hardeman County. According to Defendants, (D.E. 50 at PageID 391), the only claims from the amended complaint that pertain to Chapman are:

> 9. Defendant, Arvil Chapman, is the warden of [WCF]. Personally, and through his deputies and assistances, he is responsible for the custody, safety, and care of all [Tennessee Department of Corrections ("TDOC")] inmates confined at [WCF].

> 227. Defendants Arvil Chapman, Kevin Genovese, and Shawn Philips are the Wardens of [WCF], Turney, and Northwest, respectively. Through their deputies and assistances and their medical/mental health clinical heads and administrators (the "Does" defendants, to be identified and named), they are responsible for the consequences of management of inmate health and safety and private vendor compliance with the law and failure in same.

> 228. On information and belief, they were notified of rapes within their institutions and of placement of inmate patients in leather four-point restraints. If they were not so notified, they chose to be deliberately indifferent to these issues.

> 229. In their individual capacities, they are answerable in damages.

(D.E. 17 at ¶¶ 9, 227-29.)

As to CoreCivic,[2] Defendants aver in their motion, (D.E. 50 at PageID 391-92), that Plaintiff's allegations are only that "[CoreCivic] ha[s] policies and practices about the delivery of medical and mental health services and about inmate safety and investigations of [Prison Rape Elimination Act ("PREA")] complaints" and has "an administrative and supervisory structure that roughly mirrors that organizational table of TDOC – at least as it applies to health care and PREA." (D.E. 17 at ¶¶ 240-41.)  And that in regard to PREA complaints and medical care, "continuity in

---

[2] CoreCivic, Inc., is a Maryland corporation, registered with the Tennessee Secretary of State, whose principal place of business is Nashville, Tennessee. It was formerly known as the Corrections Corporation of America and operates several prisons for TDOC.

3

care between correctional facilities is lax" due to a purported "failure to provide adequate information from sending to receiving prisons."  (D.E. 17 at ¶¶ 206, 208.)

Finally, according to Defendants, (D.E. 50 at PageID 392), Plaintiff's only claims against Hardeman County, Tennessee ("Hardeman County"), are that HCCF is operating in avoidance of TENN. CODE ANN. § 41-24-103 and thus, the County is also liable as a "necessary party for relief."[3] (D.E. 17 at ¶¶ 233-34.)

Conversely, according to Lucas and "[c]ontrary to defense counsel's representation, there are a great many allegations against Defendants Chapman, CoreCivic, and Hardeman County," including "eight pages of 'systemic' allegations and 'pattern and practice' allegations" in their amended complaint.  (D.E. 54 at PageID 424-26.)  Plaintiff avers in his response that such allegations include the following:

- failure to act on a patient's PREA assessment score or "URGENT" mental health needs over six confinements
- failure to establish a mental health treatment plan for a symptomatic mental health patient over the last 40 months
- transferring a mental health patient without mental health continuity of care
- failure to assign acute mental health priority to a suicidal, mentally ill, battered inmate
- lack of intermediate psychiatric care for a patient held on suicide watch and returned to general population more than 30 times
- failure to conduct PREA investigations on at least ten PREA triggering events
- treating "unsubstantiated" reports of sexual assault as if they did not occur and failing to provide mental health treatment for survivors of "unsubstantiated" rapes – both contrary to federal regulations
- using sexual orientation to minimize assessment of sexual assault allegations
- failure to investigate a dozen suspicious injuries
- tolerating LGBT-phobic name-calling by staff and other inmates
- failure to follow-up on TDOC's own designation of "incompatibility" for general population
- failure to address over twenty instances of seizures as a chronic illness
- failure to maintain health problem lists that are accurate and complete

---

[3] In some of his filings, Plaintiff mistakenly refers to § 24-41-103, however, it is clear from his allegations that he means TENN. CODE ANN. § 41-24-103. As such, this Court will construe Plaintiff's citations to § 24-41-103 as references to § 41-24-103.

- failure to coordinate medical and mental health care, particularly when separate vendors are involved
- making hepatitis-C treatment decisions based on cost rather than medical judgment
- failure to supervise vendors contracting with the State of Tennessee to run prisons or provide health care, even after the State Comptroller identified the problem
- deliberately reducing TDOC monitoring capacity of vendors' performance to save money
- contracting through county governments as "straw men" to circumvent statutory restrictions on the number of private prisons allowed in Tennessee
- repeated failure to provide a system to assure that health care orders are carried out as directed
- allowing vendors to contract with other vendors without supervision
- giving vendors incentives to save money in state contracting.

(D.E. 54 at PageID 424-26.)

## STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  In determining whether dismissal under this Rule is appropriate, the court "must accept the complaint's well-pleaded factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor."  *Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).  A claim is well-pled when "it contains 'either direct or inferential allegations respecting all material elements' necessary for recovery under a viable legal theory."  *Phil. Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013) (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275–76 (6th Cir.2010)).  The court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice."  *Youth Alive, Inc.*, 732 F.3d at 649 (quoting *Terry*, 604 F.3d at 275–76).  To survive such a motion, the complaint "must state a claim to relief that rises 'above the speculative level' and is 'plausible on its face.'"

5

*Luis*, 833 F.3d at 625 (quoting *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[I]f it appears beyond doubt that the plaintiff can

prove no set of facts in support of [his] claims that would entitle [him] to relief, then . . . dismissal

is proper." *Smith v. Lerner, Sampson & Rothfuss, L.P.A.*, 658 F. App'x 268, 272 (6th Cir. 2016)

(quoting *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 515 (6th Cir. 1999)).

## ARGUMENTS OF THE PARTIES AND ANALYSIS

Plaintiff's amended complaint and response to the motion to dismiss contain many

scrambled, disconnected, and, at times, unintelligible claims against Defendants. The Court will

first address the "systemic" and "pattern and practice allegations" that Lucas asserts against all

three Defendants. The Court will then address his assertion that Defendants' motion to dismiss is

premature. Finally, the Court will turn to the specific contentions Plaintiff makes against each

Defendant.

### A. *"Systematic" and "Pattern and Practice Allegations"*

In response to their position that Lucas only made a few claims against Defendants,

Plaintiff pointed to the eight pages of "systemic" and "pattern and practice allegations" against

all three in the amended complaint. (D.E. 54 at PageID 424-26.) Defendants contend that these

averments are not applicable to them and are not sufficiently "spelled-out." (D.E. 55, PageID 9.)

In *Iqbal,* the Supreme Court explained the requirements for sustaining a motion to dismiss

under Fed. Rule Civ. Proc. 12(b)(6):

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short
> and plain statement of the claim showing that the pleader is entitled to relief." As
> the Court held in *Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929
> (2007), the pleading standard Rule 8 announces does not require "detailed factual

allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.* at 555 (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)).

. . . .

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556.

*Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).

Plaintiff's "systemic" and "pattern and practice" claims are too broad, nebulous, and conclusory while also lacking any indicia of causation. His allegations do not "[allow] the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged" because they fail to connect the claims to any of the three Defendants and then to an injury or harm. *Id*. For example, in his complaint, Lucas contends that "[he] had at least a dozen unexplained or suspicious injuries" without explaining what injuries occurred and how they relate to this lawsuit and these Defendants. (D.E. 17, ¶ 194.) He also states that "CoreCivic's annual PREA Reports for 2017 and 2018, covering privatized corrections in more than sixteen states, show that three of their TDOC prisons (including Whiteville and South Central) are in the 'top ten' institutions nationally for incidence of PREA events. South Central is the worst in the country." (D.E. 17, ¶ 215.) Plaintiff neither connects these statements to his alleged injuries nor explains how two annual reports of nationwide statistical data help prove his claims. Further, in his response, without specifying which Defendant, Plaintiff insists that a Defendant "tolerat[ed] LGBT-phobic name-calling by staff and other inmates." (D.E. 54, PageID 425.) He does not provide any detail as to how this allegation relates to his claims or how such name calling caused him harm or damages. A complaint must contain "either direct or inferential allegations respecting **all** the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny*

*Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir. 1984)) (emphasis added).

Therefore, by not relating these assertions to a harm caused by Defendants, Plaintiff's complaint falls short of this standard and does not describe a plausible claim against them. *Id.* Moreover, this disjointed and unclear pattern is one that Lucas repeats throughout his amended complaint and response,[4] including in his "systematic" and "pattern and practice allegations." Thus, even under the most liberal construction,[5] Plaintiff's "systematic" and "pattern and practice allegations" do not state a claim for relief. Therefore, these claims are dismissed.

### B.  Timing of Defendants' Motion to Dismiss

Plaintiff also argues in his response that Defendants' motion to dismiss is premature.[6] (D.E. 54, PageID 426-28.)  He contends that "there has been no opportunity to develop additional facts in support of [his] claims because [Defendants] have declined to provide any information about Mr. Lucas' institutional record or the investigations of his sexual victimization." (D.E. 54, PageID 426.)  The inmate further states that Defendants "should not be permitted to rely on any lacunae in proof when they control the documentation and have withheld it." (D.E. 54, PageID 426.)

---

[4] The following sections address this failure where applicable to the specific allegations against Defendants Chapman, CoreCivic, and Hardeman County.

[5] Even though this Court has construed Plaintiff's allegations liberally, it is not this Court's obligation to research and create Plaintiff's legal arguments. *See In re Cao,* 619 F.3d 410, 434–35 (5th Cir. 2010) (stating that the court's role is not to create arguments for adjudication but to adjudicate arguments presented); *Gross v. Town of Cicero, Ill.,* 619 F.3d 697, 704 (7th Cir. 2010) (stating that it is not the court's responsibility to research and construct the parties' arguments); *Lewless v. Sec'y of Health & Human Servs.,* 25 F.3d 1049 (6th Cir.1994) ("It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.") (citation omitted); *Baughman v. Brooks,* No. 5:15-CV-29-JMH, 2015 WL 3916150, at *4 (E.D. Ky. June 25, 2015) (same).

[6] Plaintiff also points out that Defendants' motion to dismiss relies on some cases that concern Rule 56 summary judgment motions. Although that fact may indeed be true, this Court still must determine whether Plaintiff "[stated] a claim to relief that rises 'above the speculative level' and is 'plausible on its face.'" *Luis,* 833 F.3d at 625 (quoting *Hensley Mfg. v. ProPride, Inc.,* 579 F.3d 603, 609 (6th Cir. 2009)).

As Defendants point out, (D.E. 55, PageID 440), Plaintiff's request for the production of documents was previously mentioned in an Order of Reference, (D.E. 44), addressed to the Magistrate Judge, which instructed that Lucas could file a separate motion with the Court regarding the potential production of these documents.   (D.E. 44.)   No such motion was ever filed. Additionally, "when deciding a motion to dismiss [under Fed. R. Civ. P. 12(b)(6)], a court may consider only matters properly a part of the complaint or pleadings."  *Armengau v. Cline*, 7 F. App'x 336, 343 (6th Cir. 2001).  Therefore, Defendants' motion to dismiss is not premature due to it being filed prior to the commencement of discovery because as to this motion, the Court is restricted on what it may take into account. *Id.*

### C.  Claims Against Chapman

Lucas alleged that his physical, mental, and sexual abuse was a consequence of inadequate supervision or inaction by Defendant, Chapman.  According to Plaintiff, Chapman, as the warden of WCF, is "responsible for the consequences of management of inmate health and safety and private vendor compliance with the law . . . ."  (D.E. 17, ¶ 227.)  Plaintiff avers that the Warden was notified of rapes within WCF, as well as the placement of inmate patients in leather four-point restraints, and if he was not so notified, he chose to be deliberately indifferent to this information. (D.E. 17, ¶ 228.)  Lucas claims that Chapman, in his individual capacity, is answerable in damages because the Warden had such notice.  (D.E. 17, ¶ 229.)

Supervisors may be liable for the unconstitutional conduct of their subordinates in only certain limited circumstances.  The United States Supreme Court has held that "government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of respondeat superior." *Iqbal*, 556 U.S. at 676.  Therefore, "a supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the

constitutional rights of another." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir.2006)). Instead, "supervisory liability requires some 'active unconstitutional behavior' on the part of the supervisor." *Id.* (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)).

Thus, the standard the Court must apply to determine if a supervisor's failure to supervise or train is actionable is whether the supervised "encouraged the specific incident of misconduct or in some other way directly participated in it." *Id.* at 242 (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). This means that, "'at a minimum,' the plaintiff must show that the defendant 'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Id.* (quoting *Shehee*, 199 F.3d at 300). Additionally, there must also be a "causal connection between the defendant's wrongful conduct and the violation alleged." *Id.*

Plaintiff's amended complaint fails to plausibly allege that Chapman implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of his subordinates. Two Sixth Circuit cases are instructive as to the pleading requirements to establish acquiescence in a subordinate's unconstitutional conduct. First, in *Coley v. Lucas Cty., Ohio*, 799 F.3d 530 (6th Cir. 2015), the family of a prisoner who died after a police officer put him in a chokehold sought to hold the sheriff, James Telb, personally liable for the conduct of his subordinates. *Id.* at 541-42. The Sixth Circuit found that the plaintiff had sufficiently alleged that Telb knowingly acquiesced in the officers conduct where the complaint stated that Telb had a duty to train and supervise sheriff department employees to avoid use of excessive force; that Telb failed to train and supervise staff regarding the proper use of force, including on the specific use of chokeholds; that Telb failed to properly investigate use of excessive force; and, importantly, that Telb helped to cover up the

subordinates unconstitutional actions by deliberately making false statements to federal investigators. *Id.* at 542-44.

Second, in *Peatross v. City of Memphis*, 818 F.3d 233, 236–37 (6th Cir. 2016), which involved a fatal police shooting, the family of the decedent sought to hold the Director of the Memphis Police Department, Toney Armstrong, liable as a supervisor. The complaint alleged, similar to *Coley*, that Armstrong "failed to train and supervise the officers to avoid the use of excessive force, failed to investigate the allegations of excessive force properly, and attempted to cover-up the unconstitutional conduct of his subordinates." *Id.* at 243. The complaint in *Peatross*, however, went one-step further than *Coley*, alleging that there had been fifty-four police shootings in the previous five years and that, despite Armstrong's acknowledgment of "a dire need to review and improve the police department's operations" and "its disciplinary process," no improvements were made. *Id.*

Compared to *Coley* and *Peatross*, Lucas' amended complaint fails to aver that Chapman did "more than play a passive role in the alleged violation or show mere tacit approval of the goings on," neither of which are sufficient to hold a supervisor liable. *Id.* (quoting *Gregory*, 444 F.3d at 751). It is devoid of any factual allegations related to Chapman, such as a cover-up or an acknowledgement of a need to improve operations and a subsequent failure to take action, from which the Court could conclude that he had implicitly authorized or approved of the conduct of his subordinates.

The inmate relies on *Hill v. Marshall,* 962 F.2d 1209 (6th Cir. 1992) in maintaining that Section 1983 liability attaches to the Warden for failing to uphold his general responsibility to protect the safety and health of inmates at WCF. (D.E. 54 at PageID 431-32.) According to Plaintiff, these claims should persuade the Court that pleading this general responsibility is alone

11

sufficient to survive a 12(b)(6) motion.  (D.E. 54 at PageID 431-32.)  In *Hill,* the Sixth Circuit held that a defendant, an official in charge of medical treatment at a correctional facility, could be held liable for a failure to do his supervisory job.  *Hill,* 962 F.2d at 1213.  Hill asserted that the official had actual knowledge of the plaintiff's complaints that he was not receiving his medication.  *Id.* Importantly, the official also referred inmates to a head nurse whom the official admitted he knew was altering and destroying inmates' prescriptions.  *Id.*  The Sixth Circuit found the proof to reflect that the official abandoned the duties of his position "in the face of actual knowledge of a breakdown in the proper working of the department" and ultimately concluded that the official could be held liable for a failure to do his job due to his active involvement in a function of his position that directly resulted in injury to the plaintiff.  *Id.* at 1213-14; *see also Essex v. Cty. of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013) (analyzing the Sixth Circuit's holding in *Hill* and concluding that the Court ruled in favor of the plaintiff because the defendant supervisor was actively engaged in taking an action that injured the plaintiff).

Similarly, in *Campbell v. City of Springboro, Ohio*, 700 F.3d 779 (6th Cir. 2012), a suspect and arrestee, who were attacked by the same police dog while being apprehended in unrelated incidents, brought a Section 1983 action against the chief of police, as well as other police officers. The Sixth Circuit held that the disputed facts, which precluded summary judgment, showed the causal connection between the chief's acts and omissions and the alleged constitutional injuries. *Id.* at 790.  For example, the police chief allowed the dog into the field even though the canine's training had lapsed.  *Id.*  Further, an officer complained directly to the police chief several times regarding the need to keep the dog up to date on his training, which the police chief ignored.  *Id.* Here, Plaintiff does not allege Chapman had an "actual knowledge of a breakdown in the proper working" of the prison's health and safety systems.  Importantly, there is also no allegation that

12

the Warden took any action akin to referring an inmate to a nurse he knew would destroy prescriptions. Because of these obvious differences, *Hill* and *Campbell* are distinguishable from the case at issue.

Lucas also relies on *Roland v. Johnson*, 856 F.2d 764, 767 (6th Cir. 1988). In that case, the plaintiff, a prisoner at the State Prison of Southern Michigan, claimed that he was raped by his cellmate. *Id.* at 765. Roland filed suit against Perry Johnson, the Director of the Michigan Department of Corrections, and Dale Foltz, the Warden of the prison, as well as others. *Id.* The Section 1983 action alleged that the defendants violated Plaintiff's Eighth and Fourteenth Amendment rights by failing to provide him with adequate safety and protection to protect him from the assault. *Id.* According to the opinion, Johnson and Foltz were alleged to be responsible for a pervasive policy at the prison which discouraged reporting and prosecution of sexual assaults by placing those who reported the assaults in protective custody, thereby limiting them in a manner similar to punitive detention. *Id.* at 767. In reversing the district court's granting of summary judgement to the defendants, the Sixth Circuit specifically held that, among other findings, a jury could have held Johnson and Foltz responsible for the alleged policy at the prison, which discouraged reporting of physical and sexual assaults. *Id.* at 770.

The allegations in *Roland* are not similar to those brought by Lucas. Here, Plaintiff is not contending that Chapman was responsible for a policy that discouraged reporting of sexual abuse at WCF. His position is generally that Chapman's policies and procedures were insufficient, but they do not point to a specific failure such as implementing a policy that discouraged reporting of abuse. (D.E. 17, ¶¶ 227-29.) Therefore, the court's holding in *Roland* is distinguishable from the allegations at issue here.

The inmate's final argument regarding Chapman is that "[s]upervisory officials can remain in the case for purposes of discovery of the identity of responsible subordinates."  (D.E. 54, PageID 427.)  Plaintiff cites numerous cases that purportedly stand for this position, but none come from the Sixth Circuit.  (D.E. 54, PageID 427) (citing to cases from the Second Circuit, Seventh Circuit, Fourth Circuit, and the United States District Court for the Southern District of Illinois.)  The decisions from other circuit courts are not binding authority on this Court.  *See Hall v. Eichenlaub*, 559 F. Supp. 2d 777, 782 (E.D. Mich. 2008) ("[A] district court is not bound by decisions of Courts of Appeals for other circuits.") (citing *Ghandi v. Police Dept. of City of Detroit*, 74 F.R.D. 115, 122 (E.D. Mich. 1977)); *see also Camreta v. Greene*, 563 U.S. 692, 730 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (quoting 18 James W. Moore et al., *Moore's Federal Practice* § 134.02[1][d] (3d ed. 2011)).  Moreover, this Court does not find these cases or Plaintiff's argument persuasive on this point.  Therefore, Lucas' argument to retain Chapman in the case for discovery purposes alone is not well taken.

### D.  Claims Against CoreCivic

Plaintiff alleges that "[CoreCivic] ha[s] policies and practices about the delivery of medical and mental health services and about inmate safety and investigations of PREA complaints" and has "an administrative and supervisory structure that roughly mirrors that organizational table of TDOC – at least as it applies to health care and [The Prison Rape Elimination Act ("PREA")]."  (D.E. 17 ¶¶ 240-41.)  He further maintains that regarding rape complaints and medical care, "continuity in care between correctional facilities is lax" due to a purported "failure to provide adequate information from sending to receiving prisons."  (D.E. 17,

¶¶ 208.)  As such, Plaintiff avers that this Defendant is "liable for damages under the standards of *Monell*" and is "[subject] to injunctive relief."  (D.E. 17, ¶ 244.)

In their motion to dismiss, Defendants claim that the inmate does not state a claim against CoreCivic because he fails to refer to an unconstitutional policy or custom that was the "moving force" behind the alleged constitutional deprivation.  (D.E. 50 at PageID 394-95.)  In his response, Plaintiff states that his amended complaint alleged that CoreCivic, as well as Chapman and Hardeman County, "set in place policies and procedures or failed to have them when required such that their subjective intent constituted either deliberate indifference to safety or health or discrimination."  (D.E. 54 at PageID 429.)  According to Plaintiff, "this is enough" to survive Defendants' motion to dismiss.  (D.E. 54 at PageID 429.)

The Sixth Circuit has held that defendant corporations, including CoreCivic, that perform traditional state functions cannot be held liable for a *Monell* claim unless a plaintiff establishes that a policy or well-settled custom of the corporation was the "moving force" behind the alleged deprivation of his rights.  *Braswell v. Corr. Corp. of Am.*, 419 Fed. App'x. 622, 627-28 (6th Cir. 2011).  For a policy or custom to give rise to *Monell* liability, it "must 'be so permanent and well settled as to constitute a custom or usage with the force of law. Such a custom must include deeply embedded traditional ways of carrying out state policy.'" *Miller v. Calhoun Cty.*, 408 F.3d 803, 815 (6th Cir. 2005) (quoting *Doe v. Claiborne County, Tenn.,* 103 F.3d 495, 507 (6th Cir.1996)) (internal citations omitted).  The Sixth Circuit has previously ruled that CoreCivic cannot be held liable under Section 1983 under either a respondeat superior or vicarious liability basis.  *See e.g. Braswell*, 419 Fed. App'x. at 627.  Furthermore, it is grounds for dismissal of the claims when a plaintiff names a corporate defendant without pleading or proving that his injury

15

was caused by an action taken pursuant to some policy or custom of that defendant.  *Thomas v. Coble*, 55 Fed. App'x. 748, 748-749 (6th Cir. 2003).

Here, Lucas points to alleged inadequate communication between facilities regarding PREA allegations, (D.E. 17, ¶¶ 208-09), and to a general lack of oversight between CoreCivic facilities and the TDOC.  (D.E. 54, PageID 432-37.)  However, it is unclear how these accusations relate to the purported constitutional deprivations because Plaintiff fails to connect these contentions to his injuries.  (D.E. 17, 54.)  Instead, on the face of his amended complaint, the inadequate communication allegations appear to be isolated incidents at separate facilities untethered to a pattern, practice, or custom within CoreCivic.  (D.E. 17, 54.)  Moreover, Plaintiff's general lack of oversight claims are simply broad and conclusory.  Under his averments, Plaintiff has failed to state a claim against CoreCivic because he has not alleged that an unconstitutional policy or custom was the "moving force" behind the constitutional deprivations.[7]  *Braswell*, 419 Fed. App'x. at 627.

E.  *Claims Against Hardeman County*

Plaintiff asserts that Hardeman County is liable because HCCF and WCF were operated in contravention of TENN. CODE ANN. § 41-24-103(c) even though, according to Plaintiff, Hardeman County's exact role "is not clear at the present time."  (D.E. 17 at ¶ 233.)  Lucas then alleges that Hardeman County is also liable for damages under *Monell*. (D.E. 17 at ¶ 234.)

On the first issue, according to Plaintiff, HCCF is a prison operated for the TDOC by CoreCivic through a contract between the State and Hardeman County, which, in turn, contracts

---

[7] In their motion to dismiss, Defendants also argue that "[e]ven if this Court determines Plaintiff has established a claim against CoreCivic based on an unconstitutional policy or custom, any claims arising from incidents at HCCF or SCCF must be dismissed because the statute of limitations has run on all claims relating to both facilities." (D.E. 50, PageID 396.) Plaintiff failed to respond to this argument in his response, however, based on its finding above, this Court finds it unnecessary to address Defendants' statute of limitations claim.

16

with CoreCivic.  (D.E. 17, ¶ 47.) WCF is a prison operated for TDOC by CoreCivic under a similar arrangement as HCCF.  (D.E. 17, ¶ 79.)  Lucas argues that the operation of HCCF and WCF is in violation of TENN. CODE ANN. § 41-24-103(c) because only one private prison is authorized to be in operation under the statute.  (D.E. 54, PageID 433-35.)

Plaintiff is correct that this statute authorizes Tennessee to contract for correctional services for one medium security facility with a private entity, which is SCCF. TENN. CODE ANN. § 41-24-103(c).  However, this statutory section does not apply to the contracts for the operation of HCCF and WCF, as neither are contracts directly with the State.  Instead, "[CoreCivic's] other facilities, i.e., facilities being operated pursuant to contracts with local governmental entities rather than the State of Tennessee, are being operated pursuant to the County Correctional Incentives Act of 1981, TENN. CODE ANN. § 41–8–101, *et seq*." *Friedmann v. Corr. Corp. of Am.*, 310 S.W.3d 366, 379 (Tenn. Ct. App. 2009).  Further, according to this statute, "local county governments are authorized to house certain state inmates sentenced to the Department of Correction. In turn, the counties are reimbursed by the State." *Id*.  The counties can also "subcontract with private entities, such as [CoreCivic], to provide these correctional services." *Id*. (discussing the Tennessee state law that allows for the legal operation of both HCCF and WCF).  Thus, it is clear that HCCF and WCF are lawfully operated and are not in violation of state law.

The second issue concerns Plaintiff's claim that Hardeman County is liable for damages under *Monell*.  A local government may be liable under Section 1983 if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation.  *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 658, 690-93 (1978).  But, under Section 1983, local governments are responsible only for "their own illegal acts."

*Pembaur v. Cincinnati,* 475 U.S. 469, 479 (1986) (citing *Monell,* 436 U.S. at 665–683).  More

specifically, local governments are not vicariously liable under Section 1983 for their employees'

actions.  *See Monell*, 436 U.S. at 691-92.

Plaintiffs who seek to impose liability on local governments under Section 1983 must

prove that "action pursuant to official municipal policy" caused their injury.  *Monell,* 436 U.S. at

691.  Official municipal policy includes the decisions of a government's lawmakers, the acts of

its policymaking officials, and practices so persistent and widespread as to practically have the

force of law.  *Pembaur,* 475 U.S. at 480–481.  Therefore, in order to state a claim against a

county under § 1983, the plaintiff must "(1) identify the municipal policy or custom, (2) connect

the policy to the municipality, and (3) show that his particular injury was incurred due to

execution of that policy."  *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (quoting

*Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir.2003)).

In his amended complaint, Lucas did not plainly articulate a policy or custom of

Hardeman County that was the alleged moving force behind a constitutional deprivation.  In his

response, after Defendants claimed that Plaintiff failed to make such an allegation, Lucas stated

he is "rais[ing] an Eighth Amendment challenge to the over-reaching scheme under which

private prisons are left unsupervised by TDOC or county defendants when they are operated for

TDOC by CoreCivic under contract with Tennessee counties."  (D.E. 54 at PageID 433.)

Defendants' reply states that "once again, any lack of oversight on the part of the County is not

spelled out in Plaintiff's amended complaint; as such, Plaintiff's argument is immaterial."  (D.E.

55 at PageID 447.)

Defendants correctly pointed out that Plaintiff did not make this specific argument as to

Hardeman County in his amended complaint.  (D.E. 55 at PageID 446-47.)  Moreover, even in

his response, (D.E. 54 ), the inmate's contentions are not sufficiently detailed as it lacks any details connecting "the over-reaching scheme" of a lack supervision of prisons to Hardeman County and further fails to relate that lack of supervision to the alleged injuries. *See Turner*, 412 F.3d at 639 (finding that the requirements of stating a claim against a county under Section 1983 are as follows: the plaintiff must identify a policy or custom of the municipality, connect the policy to the governmental entity, and show that her injury was incurred because of that policy). For these reasons, this claim should be dismissed.[8]

## CONCLUSION

Based upon the foregoing, the Defendants' motion to dismiss (D.E. 50) is hereby GRANTED.  Plaintiff's claims against Defendants Chapman, CoreCivic and Hardeman County are therefore DISMISSED.

IT IS SO ORDERED this 28th day of October 2020.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[8] Defendants also argue that "a contract explicitly authorized under Tennessee law simply for the operation of a prison is not a policy or custom contemplated by *Monell*." Given the Court's finding, the Court need not address this argument.