IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

CHASE EDWARD LUCAS,

      Plaintiff,

v.                                                                          Case No. 1:18-cv-01211-JDB-cgc

ALLEN CHALK; ROBERT
COLETTE; CORECIVIC, INC.;
TONY PARKER; ARVIL CHAPMAN;
KEVIN GENOVESE; SHAWN PHILLIPS;
KENT A. COLBURN; DINA KULENOVIK;
HARDEMAN COUNTY, TENNESSEE;
JOHN AND JANE DOES; and,
XYZ CORPORATIONS,

      Defendants.

---

ORDER DECLINING TO ADOPT MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION AND GRANTING DEFENDANTS TONY PARKER, SHAWN
PHILLIPS, AND KEVIN GENOVESE'S MOTION TO DISMISS

---

## I.     INTRODUCTION

Before the Court is the motion of Defendants, Tony Parker, Shawn Phillips and Kevin

Genovese, to dismiss the claims against them by Plaintiff, Chase Edward Lucas, pursuant to Rule

12(b)(6), Federal Rules of Civil Procedure ("Fed. R. Civ. P."). (Docket Entry ("D.E.") 34.) Lucas

submitted a response, (D.E. 41), to which Defendants replied, (D.E. 46). The motion was referred

to Magistrate Judge Charmiane G. Claxton for a Report and Recommendation ("R&R"), (D.E.

43), and on February 11, 2020, Judge Claxton recommended that the motion be denied. (D.E. 59).

On February 20, 2020, the Defendants filed objections to the R&R. (D.E. 62.) Because Plaintiff

has not responded to Defendants' objections, and the time to object and/or respond has expired,

this matter is ripe for a decision. For the reasons set forth herein, the Court declines to accept the Magistrate Judge's recommendation and **GRANTS** Defendants' motion to dismiss.

II.      COURT'S REVIEW OF MAGISTRATE JUDGE'S DETERMINATION

When objections have been filed with respect to a report and recommendation of the magistrate judge, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which [an] objection is made."  28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3).  The district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3).  "[T]he filing of an objection does not oblige the district court to ignore the report and recommendation; it requires the court to give fresh consideration to the finding objected to insofar as the objection impugns the integrity of the finding."  *Pharmacy Records v. Nassar*, 465 F. App'x 448, 456 (6th Cir. 2012) (per curiam) (internal quotation marks omitted).

According to Magistrate Judge Claxton, Plaintiff's allegations against Parker are "suffic[ient] to plead that [his] actions condoned or knowingly acquiesced in the unconstitutional conduct." (D.E. 59 at PageID 489.) She also found that Plaintiff's claims that Phillips and Genovese were responsible for the consequences of their management of inmate health and safety and private vendor compliance with the law was the type of respondeat superior liability that was not proper to state a claim pursuant to 42 U.S.C. Section 1983. (D.E. 59 at PageID 489.)  Judge Claxton concluded, however, that Plaintiff's contentions that Phillips and Genovese were notified of rapes and of the placement of inmates in leather four-point restraints, sufficiently pleaded that they "at the least condon[ed], implicitly authoriz[ed], or approv[ed] the allegedly inadequate medical care and, at most, were personally involved in it." (D.E. 59 at PageID 489.) With respect

2

to Defendants' qualified immunity argument, Judge Claxton recommended that the Court hold that Defendants were not entitled to this defense. (D.E. 59 at PageID 490-91.)  The magistrate judge's recommendation follows from her finding that the right to be free from deliberate indifference to assault and sexual abuse was clearly established at the time of the alleged constitutional violation. (D.E. 59 at PageID 491.)

Although Defendants made specific arguments against Judge Claxton's recommendations, they did not present new arguments but generally reiterated the same positions found in their motion to dismiss and reply. (D.E. 34, D.E. 46, and D.E. 62.) Defendants' primary insistence was that Plaintiff's allegations constituted claims of respondeat superior. (D.E. 62.) According to Defendants, Plaintiff has not contended Defendants had the necessary knowledge of the purported constitutional violations nor did he assert Defendants were deliberately indifferent to those violations. (D.E. 62.)  Relatedly, they also alleged that Plaintiff had not shown Defendants "subjective deliberate indifference and intentional discrimination against the plaintiff, through [their] personal involvement in the alleged unconstitutional acts." (D.E. 62.)  As such, argue the Defendants, Plaintiff's claims amount to no more than respondeat superior claims, which are not cognizable under Section 1983. (D.E. 62.)

More specifically, Defendants objected to the magistrate judge's conclusion that Plaintiff has sufficiently stated a claim by alleging that Genovese and Phillips "were notified of rapes within their institutions and of placement of inmate patients in leather four-point restraints." (D.E. 62 at PageID 540.)  According to Defendants, Plaintiff has not presented sufficient facts showing that Defendants were aware of Plaintiff's condition and deliberately indifferent to it, which is required to state an Eighth Amendment claim. (D.E. 62 at PageID 540.)

As to the claims against Parker that he "failed to train staff to protect the rights of LGBT inmates and prevent First Amendment retaliation," (D.E. 18 at ¶ 225), Defendants' objection maintains that "[w]here there is no allegation of encouragement or direct participation in a specific incident of misconduct, the 'failure to train' claim against [Parker] fails." (D.E. 62 at PageID 541.)

## III.   BACKGROUND

On October 9, 2018, Lucas, a Tennessee state inmate at the Whiteville Correctional Facility ("WCF"), filed a pro se complaint against Defendant, Allen Chalk, in the United States District Court for the Middle District of Tennessee alleging violations of his civil rights pursuant to Section 1983. (D.E. 1.) Plaintiff asserted violations of the Eighth Amendment to the United States Constitution against Chalk, the Mental Health Coordinator at WCF, regarding his handling of Plaintiff's reports that he was raped during his incarceration. (D.E. 1.) The complaint was subsequently transferred to this Court. (D.E. 4, 5.)

On October 30, 2018, this Court dismissed Plaintiff's complaint and certified that any appeal would not be taken in good faith. (D.E. 7.) Chase appealed to the United States Court of Appeals for the Sixth Circuit which, on August 19, 2019, vacated the dismissal and remanded with instructions to grant Plaintiff leave to amend. (D.E. 14, 15.) On September 10, 2019, the Court ordered the re-opening of the case and granted Plaintiff leave to file an amended complaint, (D.E. 16), which Plaintiff filed October 1, 2019. (D.E. 18.)

The amended complaint sets forth a much broader scope of deliberate indifference to Plaintiff's safety and physical and mental health over the period of his incarceration at six different institutions within the Tennessee prison system—the Bledsoe County Correctional Complex ("BCCC"); the Hardeman County Correctional Facility ("HCCF"); the South Central Correctional Facility ("SCCF"); WCF; Turney Center Industrial Complex ("Turney"); and, Northwest

Correctional Complex ("Northwest"). (D.E. 18.)   Under Section 1983, Plaintiff raises the following causes of action: (1) deliberate indifference to his serious health needs in violation of the Eighth Amendment; (2) deliberate indifference to his need for safety and protection in contravention of the Eighth Amendment; (3) violation of his right to equal protection under the Fourteenth Amendment; and, (4) retaliation under the First Amendment. (D.E. 18 at PageID 141-42.)

As to the specific allegations that are addressed in Defendants' motion to dismiss, there is some dispute between the parties regarding which of the contentions in the amended complaint are directed towards Parker, Genovese, and/or Phillips. According to Defendants, (D.E. 35 at PageID 286-88), the only claims from the amended complaint that pertain to them are the following:

8.   Defendant, TONY PARKER, is the [Tennessee Department of Corrections ("TDOC")] Commissioner. Personally, and through his deputies and assistants, he is responsible for the custody, safety, and care of all TDOC inmates.

 . . . .

10. Defendant, KEVIN GENOVESE, is the warden of the Turney Center Correctional Complex. Personally, and through his deputies and assistants, he is responsible for the custody, safety, and care of all TDOC inmates confined at Turney.

11. Defendant, SHAWN PHILLIPS, is the warden of Northwest Correctional Complex. Personally, and through his deputies and assistants, he is responsible for the custody, safety, and care of all TDOC inmates confined at Northwest.

 . . . .

223. Defendant, TONY PARKER rose through the ranks at TDOC. Starting at Northwest, he became Warden. His promotions include: Western Regional TDOC Commissioner, Assistant Commissioner for Prisons, and Commissioner (through two Governors).

224. On information and belief, Commissioner Parker is familiar with [the Prison Rape Elimination Act ("PREA")] compliance failures within TDOC and with the poor performance of CoreCivic and Corizon. He is personally responsible for the cut in staff for oversight of their contracts.

225. Through his deputies and assistants (the "Doe" defendants, to be identified and named), Commissioner Parker is responsible for the consequences of his management of inmate health and safety and private vendor compliance with the law and the failures in same. He and his deputies and assistants have failed to train staff to protect the rights of LGBT inmates and prevent First Amendment retaliation.

226. In his individual capacity, [Parker] is answerable in damages. In his official capacity, he is needed for any injunction to be effective, given Mr. Lucas' frequent transfers among TDOC prisons over the last three plus years.

227. Defendants . . . Kevin Genovese and Shawn Phillips are the Wardens of . . . Turney, and Northwest, respectively. Through their deputies and assistants and their medical/mental health clinical heads and administrators (the "Doe" defendants, to be identified and named), they are responsible for the consequences of management of inmate health and safety and private vendor compliance with the law and the failures in same.

228. On information and belief, [Genovese and Phillips] were notified of rapes within their institutions and of placement of inmate patients in leather four-point restraints. If they were not so notified, they chose to be deliberately indifferent to these issues.

229. In their individual capacities, [Genovese and Phillips] are answerable in damages. In official capacity, Warden Phillips and his Does are needed for any injunction to be effective, given Mr. Lucas' current place of incarceration.

(D.E. 18 at ¶¶ 8, 10, 11 223-29.)

Conversely, according to Lucas "there are far more than ten allegations against these defendants," as there are "eight pages of 'systemic' allegations and 'pattern and practice' allegations" in the amended complaint. (D.E. 41 at PageID 346-47.) Plaintiff avers in his response that the systemic and pattern and practice claims against Parker, Genovese, and Phillips include the following:

- failure to act on a patient's PREA assessment score or "URGENT" mental health needs over six confinements
- failure to establish a mental health treatment plan for a symptomatic mental health patient over the last 40 months
- transferring a mental health patient without mental health continuity of care

- failure to assign acute mental health priority to a suicidal, mentally ill, battered inmate
- lack of intermediate psychiatric care for a patient held on suicide watch and returned to general population more than 30 times
- failure to conduct PREA investigations on at least ten PREA triggering events
- treating "unsubstantiated" reports of sexual assault as if they did not occur and failing to provide mental health treatment for survivors of "unsubstantiated" rapes – both contrary to federal regulations
- using sexual orientation to minimize assessment of sexual assault allegations
- failure to investigate a dozen suspicious injuries
- tolerating LGBT-phobic name-calling by staff and other inmates
- failure to follow-up on TDOC's own designation of "incompatibility" for general population
- failure to address over twenty instances of seizures as a chronic illness
- failure to maintain health problem lists that are accurate and complete
- failure to coordinate medical and mental health care, particularly when separate vendors are involved
- making hepatitis-C treatment decisions based on cost rather than medical judgment
- failure to supervise vendors contracting with the State of Tennessee to run prisons or provide health care, even after the State Comptroller identified the problem
- deliberately reducing TDOC monitoring capacity of vendors' performance to save money
- contracting through county governments as "straw men" to circumvent statutory restrictions on the number of private prisons allowed in Tennessee
- repeated failure to provide a system to assure that health care orders are carried out as directed
- allowing vendors to contract with other vendors without supervision
- giving vendors incentives to save money in state contracting.

(D.E. 41 at PageID 347-48.)

The Defendants assert that Plaintiff fails to state a claim because his contentions are devoid of specific factual support and because there is no respondeat superior liability in Section 1983 actions. (D.E. 35 at PageID 289-294.) The Defendants further argue that the doctrine of qualified immunity insulates them from a suit for damages. (D.E. 35 at PageID 294-95.) In response, Plaintiff insists that dismissal is premature, that he has adequately pled claims against these Defendants, and that they are not entitled to qualified immunity. (D.E. 41.)

## IV.      STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."   In determining whether dismissal under this Rule is appropriate, the court "must accept the complaint's well-pleaded factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor."  *Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).   A claim is well-pled when "it contains 'either direct or inferential allegations respecting all material elements' necessary for recovery under a viable legal theory."  *Phil. Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013) (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275–76 (6th Cir.2010)).   The court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice."  *Youth Alive, Inc.*, 732 F.3d at 649 (quoting *Terry*, 604 F.3d at 275–76).   To survive such a motion, the complaint "must state a claim to relief that rises 'above the speculative level' and is 'plausible on its face.'"  *Luis*, 833 F.3d at 625 (quoting *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   "[I]f it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claims that would entitle [him] to relief, then . . . dismissal is proper."  *Smith v. Lerner, Sampson & Rothfuss, L.P.A.*, 658 F. App'x 268, 272 (6th Cir. 2016) (quoting *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 515 (6th Cir. 1999)).

## V.      ANALYSIS

The amended complaint and response to the motion to dismiss contain many scrambled, disconnected, and, at times, unintelligible claims against Defendants. The Court will first address Lucas' systemic and pattern and practice allegations, followed by the timeliness of Defendants' motion to dismiss. Next, the Court will examine the applicability of qualified immunity as to each of the defendants. Finally, the Court will turn to the specific contentions Plaintiff makes against the Defendants.

A. *"Systematic" and "Pattern and Practice Allegations"*

In response to Defendants' position that Lucas had presented only a few claims, Plaintiff referenced the eight pages of systemic and pattern and practice allegations. (D.E. 41 at PageID 346-48.) Defendants contend that these averments are not applicable to them and do not allege they were personally involved in any of the allegations. (D.E. 46 at PageID 371.)

In *Iqbal,* the Supreme Court explained the requirements for sustaining a motion to dismiss under Fed. Rule Civ. Proc. 12(b)(6):

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in *Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.* at 555 (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)).
> . . . .
> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556.

*Iqbal*, 556 U.S. at 677–78.

Plaintiff's systemic and pattern and practice claims are too broad and conclusory while also lacking any indicia of causation. His allegations do not "[allow] the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged" because they fail to connect

the claims to any of the Defendants and then to a harm he may have sustained. *Id.* For example, Lucas contends that "[he] had at least a dozen unexplained or suspicious injuries" without specifying what occurred and how these relate to this lawsuit and these particular Defendants. (D.E. 18 at ¶ 194.)  He also states that "CoreCivic's annual PREA Reports for 2017 and 2018, covering privatized corrections in more than sixteen states, show that three of their TDOC prisons (including Whiteville and South Central) are in the 'top ten' institutions nationally for incidence of PREA events. South Central is the worst in the country." (D.E. 18 at ¶ 215.)  Plaintiff neither connects these statements to his alleged injuries nor explains how two annual reports of nationwide statistical data help prove his claims. Further, in his response, without specifying which Defendant, Plaintiff insists that some person or organization "tolerat[ed] LGBT-phobic name-calling by staff and other inmates." (D.E. 41 at PageID 347.) However, he does not provide any detail as to how this allegation relates to his claims or how such name calling caused him damages.  A complaint must contain "either direct or inferential allegations respecting **all** the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir. 1984)) (emphasis added).

Therefore, by not relating these assertions to a harm caused by Defendants, Plaintiff's complaint falls short of this pleading standard and does not describe a plausible claim against them. *Id.* Moreover, this disjointed and unclear pattern is one that Lucas repeats throughout his amended complaint and response,[1] including in his systematic and pattern and practice allegations.  Thus,

---

[1] The following sections address this failure where applicable to the specific allegations against Defendants Parker, Genovese, and Phillips.

even under the most liberal construction,[2] Plaintiff's assertions do not state a claim for relief. Therefore, these claims are dismissed.

### B.  Timing of Defendants' Motion to Dismiss

The inmate also argues in his response that Defendants' motion to dismiss is premature.[3] (D.E. 41 at PageID 348–50.)  He contends that "there has been no opportunity to develop additional facts in support of such claims because the TDOC declined to provide any information about Mr. Lucas' institutional record or TDOC's investigations of his sexual victimization."  (D.E. 41 at PageID 348–49.)  He further states that Defendants should not be allowed to argue a deficiency in proof when they maintain the documents which they have not disclosed.  (D.E. 41 at PageID 349.)

Plaintiff's request for the production of documents was previously referenced in an order (D.E. 44), in which the district judge instructed Plaintiff that he could file a separate motion with the Court regarding the potential production of these documents. (D.E. 44.)  No such motion was ever filed. Additionally, "when deciding a motion to dismiss [under Fed. R. Civ. P. 12(b)(6)], a court may consider only matters properly a part of the complaint or pleadings."  *Armengau v. Cline*, 7 F. App'x 336, 343 (6th Cir. 2001).  Therefore, Defendants' motion to dismiss is not premature simply because it was filed prior to the commencement of discovery. *Id.*

### C.  Qualified Immunity

---

[2] Even though this Court has construed Plaintiff's allegations liberally, it is not this Court's obligation to research and frame Plaintiff's legal arguments. *See Shqutaj v. Gonzales*, 158 F. App'x 663, 665 (6th Cir. 2005) ("Where the petitioner's brief lacks legal or factual argument, this Court will not examine the record and construct an argument on petitioner's behalf."); *Lewless v. Sec'y of Health & Human Servs.*, 25 F.3d 1049 (6th Cir.1994) ("It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.") (citation omitted); *Baughman v. Brooks*, No. 5:15-CV-29-JMH, 2015 WL 3916150, at *4 (E.D. Ky. June 25, 2015) (same).

[3] Lucas also points out that Defendants' motion to dismiss relies on a number of cases that concern Rule 56 summary judgment motions. (D.E. 41 at PageID 354.) Although that may be true, this Court still must determine whether Plaintiff "[stated] a claim to relief that rises 'above the speculative level' and is 'plausible on its face.'" *Luis*, 833 F.3d at 625 (quoting *Hensley Mfg.*, 579 F.3d at 609).

In their supporting memorandum of law, Defendants aver that even if Plaintiff has adequately pled a Section 1983 claim, the doctrine of qualified immunity prevents a suit against them for damages. (D.E. 35 at PageID 294.) Plaintiff responded that Defendants are not entitled to this defense because the allegations against Defendants are sufficient to state claims against them. (D.E. 41 at PageID 356-57.)  Lucas also insisted that qualified immunity applies only to damage claims. (D.E. 41 at PageID 356.)

Magistrate Judge Claxton recommended that Defendants' qualified immunity claim be denied because the "right to be free from deliberate indifference to assault and sexual abuse under the Eighth Amendment was clearly established at the time of the alleged constitutional violation." (D.E. 59 at PageID 491.)  In their objections, Defendants stated they are entitled to qualified immunity from the suit for damages because Plaintiff has not appropriately stated a claim against them. (D.E. 62 at PageID 541.)

1. Standard of Review

Officials acting under the color of law who violate one or more constitutional rights of a plaintiff may be held liable under Section 1983.  *Essex v. Cty. of Livingston*, 518 F. App'x 351, 356 (6th Cir. 2013) (citing *Kentucky v. Graham,* 473 U.S. 159, 166 (1985)). However, qualified immunity bars individual liability from damages claims, so long as "a reasonable official in the defendant's position would not have understood his or her actions to violate a person's constitutional rights." *Essex*, 518 F. App'x at 356 (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 738 (6th Cir.2006)). "Qualified immunity gives ample room for mistaken judgments, protecting all but the plainly incompetent or those who knowingly violate the law." *Essex*, 518 F. App'x at 356 (citing *Chappell v. City of Cleveland,* 585 F.3d 901, 907 (6th Cir. 2009) (citations omitted)).

To decide whether a party is entitled to qualified immunity, courts must make two determinations: "whether a defendant violated a constitutional right and whether the right was clearly established." *Marcilis II v. Township of Redford*, 693 F.3d 589, 598 (6th Cir. 2012) (citing *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011)). Additionally, the plaintiff has the burden to establish that the defendant is not entitled to qualified immunity. *Hagedorn v. Cattani*, 715 Fed. App'x. 499, 504 (6th Cir. 2017).

2. Analysis

Although the alleged sexual and physical assaults of Lucas are established violations of his constitutional rights, *see Essex*, 518 F. App'x at 357, he fails to allege any facts that the actions of Defendants violated his rights. For these Defendants to be individually liable, Plaintiff needed to demonstrate that they "encouraged the specific incident of misconduct or in some other way directly participated in it." *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Yet, the inmate's allegations fall short of this standard.

Plaintiff's contentions amount to, at best, a failure to act, which without more, is insufficient to support his claim. *Hays v. Jefferson Cty.*, 668 F.2d 869, 873–74 (6th Cir. 1982) (A "mere failure to act (even) in the face of a statistical pattern of incidents of misconduct" is not sufficient to confer liability.). For Lucas' claim to survive, he is required to refer to acts by the Defendants that directly contributed to his injury. *Essex*, 518 F. App'x at 355 ("There must be some conduct on the supervisor's part to which the plaintiff can point that is directly correlated with the plaintiff's injury."). There are no such allegations here.

In *Essex*, upon which Defendants rely, the Sixth Circuit faced a similar set of circumstances and granted a supervisory defendant qualified immunity. *Essex*, 518 F. App'x at 356. In that case,

a deputy sexually assaulted the plaintiffs while transporting them from the county jail to the county courthouse. *Id.* at 352. One of the defendants, Robert Bezotte, was the sheriff of the county at the relevant time. *Id.* at 353. Bezotte had read in newspapers about some law enforcement officers sexually assaulting inmates, but he did not provide any training for deputies that specifically stated that sexual assault of inmates was prohibited. *Id.*

The plaintiff inmates filed a Section 1983 lawsuit against Bezotte. *Id.* at 353. Akin to the accusations faced by the three defendants here, the plaintiff in *Essex* claimed that Bezotte failed to implement proper policies and procedures, did not adequately train deputies on sexual assault, and neglected to properly supervise the subordinate officer. *Id.* at 353-54. The Sixth Circuit found that the plaintiffs "were required to point to some actual conduct by Bezotte that directly contributed to their injury" to defeat his qualified immunity defense. *Id.* at 357. The Court held that Plaintiff's allegations failed to meet this standard. *Id*. As a result, the Sixth Circuit granted Bezotte qualified immunity and dismissed the case against him. *Id.*

Here, Lucas argues that *Essex* is distinguishable because Bezotte's knowledge of the risk of assault was limited to the newspaper's reporting about sexual assaults on inmates occurring in other jurisdictions. (D.E. 41 at PageID 357.) Plaintiff contends that because the assaults at issue here occurred in Defendants' "own house" and have been the subject of official audits and criticisms, the relevant facts in this case are distinguishable from *Essex*. (D.E. 41 at PageID 357.)

The Court disagrees. Although the facts in *Essex* and the allegations presented here are different, the *Essex* opinion emphasizes the importance of personal action taken by the supervisor to find that supervisor liable. *See e.g. Essex*, 518 F. App'x at 357 ("Plaintiffs fail to assert any facts that Bezotte's personal actions violated those rights. For Bezotte to be individually liable for failing to train or supervise, Plaintiffs needed to demonstrate that he took deliberate action or was

14

otherwise involved in [his subordinate's] illegal acts."). Here, similar to Bezotte, Plaintiff did not claim that Defendants took any "deliberate action" or was otherwise involved in the illicit acts. Therefore, because the facts as stated by Lucas do not establish a constitutional violation by these Defendants in their individual capacity, the Court finds that Defendants are entitled to qualified immunity and the assertions against them should be dismissed.

Although the Court finds that qualified immunity applies to the Defendants, the Court will proceed to analyze and make findings in the alternative on Plaintiff's claim that these Defendants should remain in the case for discovery purposes and on Plaintiff's damage claims.

### D.  Keeping Defendants for the Purpose of Discovery

The inmate also argues that the Court should retain Parker, Genovese, and Phillips as parties because "[s]upervisory officials can remain in the case for purposes of discovery of the identity of responsible subordinates." (D.E. 41 at PageID 349-50.) Plaintiff cites numerous cases that purportedly stand for this position, but none come from the Sixth Circuit.  (D.E. 41 at PageID 349-50.) (citing to cases from the Second Circuit, Seventh Circuit, Fourth Circuit, and the United States District Court for the Southern District of Illinois.)  The decisions from other circuit courts are not binding authority on this Court.  *Hall v. Eichenlaub*, 559 F. Supp. 2d 777, 782 (E.D. Mich. 2008) ("[A] district court is not bound by decisions of Courts of Appeals for other circuits.") (citing *Ghandi v. Police Dept. of City of Detroit*, 74 F.R.D. 115, 122 (E.D. Mich. 1977)); *see also Camreta v. Greene*, 563 U.S. 692, 730 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (quoting 18 James W. Moore et al., *Moore's Federal Practice* § 134.02[1][d] (3d ed. 2011)).  Moreover, this Court does not find these cases or Plaintiff's argument

15

persuasive on this point.  Therefore, Lucas' argument to retain Defendants in the case for discovery purposes alone is not well taken.

    *E.  Claims Against Defendants Parker, Phillips, and Genovese*

    1.  Supervisory Liability

Lucas alleged that "Commissioner Parker is familiar with PREA compliance failures within TDOC and with the poor performance of CoreCivic and Corizon." (D.E. 18 at ¶ 224.) According to Plaintiff, "[t]hrough his deputies and assistants (the "Doe" defendants, to be identified and named), Commissioner Parker is responsible for the consequences of his management of inmate health and safety and private vendor compliance with the law and the failures in same." (D.E. 18 at ¶ 225.)

According to Plaintiff, Genovese, as the warden of Turnkey, and Phillips, as the warden of Northwest are both "responsible for the consequences of management of inmate health and safety and private vendor compliance with the law . . . ." (D.E. 18 at ¶ 227.)  He avers that both wardens were notified of rapes within their prisons, as well as the placement of inmate patients in leather four-point restraints, and if they were not so notified, they chose to be deliberately indifferent to this information.  (D.E. 18 at ¶ 228.)  Lucas claims that Genovese and Phillips, in their individual capacities, are answerable in damages.  (D.E. 18 at ¶ 229.)

Magistrate Judge Claxton found that Plaintiff's respondeat superior allegations about Phillips and Genovese did not formulate the type of liability appropriate for responsibility under Section 1983. (D.E. 59 at PageID 489.)  Judge Claxton did conclude, however, that the claims that these Defendants were notified of rapes and of the placement of inmates in leather four-point restraints, reflected that they "at the least condon[ed], implicitly authoriz[ed], or approv[ed] the

allegedly inadequate medical care and, at most, were personally involved in it." (D.E. 59 at PageID 489.)

In their objections to the R&R, Defendants argued that to properly state an Eighth Amendment claim, Plaintiff must allege facts showing that Defendants were aware of Plaintiff's condition and were deliberately indifferent to it. (D.E. 62 at PageID 540.) According to Defendants, he did not meet this standard. (D.E. 62 at PageID 540.)

Supervisors may be held liable for the unconstitutional conduct of their subordinates in only certain limited circumstances. The United States Supreme Court has held that "government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of respondeat superior." *Iqbal*, 556 U.S. at 676. Therefore, "a supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another." *Peatross*, 818 F.3d at 241 (citing *Gregory*, 444 F.3d at 751). Instead, "supervisory liability requires some 'active unconstitutional behavior' on the part of the supervisor." *Peatross*, 818 F.3d at 241 (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). Consequently, unless the plaintiff's complaint affirmatively pleads the direct involvement of the defendant in the allegedly unconstitutional action, the complaint fails to state a claim against that defendant and dismissal is warranted. *See Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984).

Thus, the standard the Court must apply to determine if a supervisor's failure to supervise or train is actionable is whether the supervised "encouraged the specific incident of misconduct or in some other way directly participated in it." *Peatross*, 818 F.3d at 242 (quoting *Shehee*, 199 F.3d at 300). This means that, "'at a minimum,' the plaintiff must show that the defendant 'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the

offending officers.'"  *Id.* (quoting *Shehee*, 199 F.3d at 300).  Additionally, there must also be a "causal connection between the defendant's wrongful conduct and the violation alleged."  *Id.*

Plaintiff's amended complaint fails to plausibly allege that Parker implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of his subordinates.  Two Sixth Circuit cases are instructive as to the pleading requirements to establish acquiescence in a subordinate's unconstitutional conduct.  First, in *Coley v. Lucas Cty., Ohio*, 799 F.3d 530 (6th Cir. 2015), the family of a prisoner who died after a police officer put him in a chokehold sought to hold the sheriff, James Telb, personally liable for the conduct of his subordinates.  *Id.* at 541–42. The Sixth Circuit found that the plaintiff had sufficiently alleged that the sheriff knowingly acquiesced in the officers conduct where the complaint averred the following: he had a duty to train and supervise sheriff department employees to avoid use of excessive force; Telb failed to train and supervise staff regarding the proper use of force, including on the specific use of chokeholds; he did not properly investigate use of excessive force; and, importantly, the sheriff helped to cover up the subordinates unconstitutional actions by deliberately making false statements to federal investigators.  *Id.* at 542–44.

Second, in *Peatross*, which involved a fatal police shooting, the family of the person killed sought to hold the Director of the Memphis Police Department, Toney Armstrong, liable as a supervisor.  *Id.* at 236–37. The complaint alleged, similar to *Coley*, that Armstrong "failed to train and supervise the officers to avoid the use of excessive force, failed to investigate the allegations of excessive force properly, and attempted to cover-up the unconstitutional conduct of his subordinates."  *Id.* at 243.  The complaint in *Peatross*, however, went one-step further than *Coley*, claiming that there had been fifty-four police shootings in the previous five years and that, despite

18

Armstrong's acknowledgment of "a dire need to review and improve the police department's operations" and "its disciplinary process," no improvements were made.  *Id.*

Contrary to *Coley* and *Peatross*, Lucas' amended complaint fails to aver that Defendants did "more than play a passive role in the alleged violation or show mere tacit approval of the goings on," neither of which are sufficient to hold a supervisor liable.  *Id.* (quoting *Gregory*, 444 F.3d at 751).  It is devoid of any factual allegations related to Defendants, such as an acknowledgement of a need to improve operations and a subsequent failure to take action or an attempt to cover-up his subordinates' actions.

The inmate relies on *Hill v. Marshall,* 962 F.2d 1209 (6th Cir. 1992) in maintaining that liability attaches to Parker, and the other defendants, for failing to uphold his general responsibility to protect the safety and health of inmates.  (D.E. 41 at PageID 355.)  According to Plaintiff, these claims should convince the Court that pleading this general responsibility is alone sufficient to survive a 12(b)(6) motion.  (D.E. 41 at PageID 355-56.)

In *Hill,* the Sixth Circuit held that a defendant, an official in charge of medical treatment at a correctional facility, could be held liable for a failure to perform his supervisory job.  *Hill,* 962 F.2d at 1213.  Hill asserted that the official had actual knowledge of the plaintiff's complaints that he was not receiving his medication.  *Id.*  Importantly, the official also referred inmates to a head nurse whom the official admitted he knew was altering and destroying inmates' prescriptions.  *Id.* The Sixth Circuit found the proof to reflect that the official abandoned the duties of his position "in the face of actual knowledge of a breakdown in the proper working of the department" and ultimately concluded that the official could be held liable due to his active involvement in a function of his position that directly resulted in injury to the plaintiff.  *Id.* at 1213-14; *see also* *Essex*, 518 F. App'x at 355 (analyzing the Sixth Circuit's holding in *Hill* and concluding that the

appellate panel ruled in favor of the plaintiff because the defendant supervisor was actively engaged in taking an action that injured the plaintiff).

Similarly, in *Campbell v. City of Springboro, Ohio*, 700 F.3d 779 (6th Cir. 2012), a suspect and arrestee, who were attacked by the same police dog while being apprehended in unrelated incidents, brought a Section 1983 action against the chief of police, as well as other police officers. *Id.* at 782-90. The Sixth Circuit held that the disputed facts, which precluded summary judgment, showed the causal connection between the chief's acts and omissions and the alleged constitutional injuries. *Id.* at 789–90. For example, the police chief allowed the dog into the field even though the canine's training had lapsed. *Id.* The police chief also permitted the canine division to operate with little supervision and also failed to establish a set of policy guidelines for the division. *Id.* Further, an officer complained directly to the police chief several times regarding the need to keep the dog up to date on his training, which the supervisor ignored. *Id.*

Lucas does not allege that Defendants took an action akin to referring an inmate to a nurse they knew would destroy prescriptions. *Hill,* 962 F.2d at 1212–14. Nor does Plaintiff set forth the breadth of inaction coupled with a direct complaint from Defendants' subordinate employees like the circumstances found in *Campbell*. *Campbell*, 700 F.3d at 790. Because of these obvious differences, *Hill* and *Campbell* are distinguishable from the case at issue.

Plaintiff also relies on *Roland v. Johnson*, 856 F.2d 764, 767 (6th Cir. 1988). In that case, the complainant, a prisoner at the State Prison of Southern Michigan, claimed that he was raped by his cellmate. *Id.* at 765. Roland filed suit against Perry Johnson, the Director of the Michigan Department of Corrections, and Dale Foltz, the Warden of the prison, as well as others. *Id.* The Section 1983 action alleged that Defendants violated Plaintiff's Eighth and Fourteenth Amendment rights by failing to provide him with adequate safety and protection to safeguard him

from the assault. *Id.* According to the opinion, Johnson and Foltz were alleged to be responsible for a pervasive policy at the prison which discouraged reporting and prosecution of sexual assaults by placing those who reported the assaults in protective custody, thereby restricting them in a manner similar to punitive detention. *Id.* at 767. In reversing the district court's granting of summary judgement to the defendants, the Sixth Circuit specifically held that, among other determinations, a jury could have found Johnson and Foltz responsible for the alleged policy at the prison, which discouraged reporting of physical and sexual assaults. *Id.* at 770.

The allegations in *Roland* are not similar to those brought by Lucas. Here, Plaintiff is not contending that Defendants were responsible for a policy that discouraged reporting of sexual abuse. His position is generally that Defendants' policies and procedures were insufficient, but they do not point to a specific failure such as discouraging the reporting of abuse. Therefore, the court's holding in *Roland* is distinguishable from the allegations at issue here.

2. Injunctive Relief

Plaintiff also requests injunctive relief against Defendants. (D.E. 18 at PageID 104.) Lucas claims that "[i]n his official capacity, [Parker] is needed for any injunction to be effective, given Mr. Lucas' frequent transfers among TDOC prisons over the last three plus years." (D.E. 18 at ¶ 226.) Additionally, the inmate states that "Warden Phillips and his Does are needed for any injunction to be effective, given Mr. Lucas' current place of incarceration." (D.E. 18 at ¶ 229.) Finally, he seeks "[a] permanent injunction directing those Defendants responsible for his current and future health care, safety, and equal protection, to conform their conduct to the First, Eighth and Fourteenth Amendments to the United States Constitution." (D.E. 18 at PageID 142.)

For the reasons noted previously, the Court finds that Plaintiff has to make factual allegations showing the requisite personal involvement in the alleged unconstitutional actions of

Parker, Phillips, and Genovese. Specifically, Plaintiff's claims against these Defendants flow from a theory of respondeat superior. However, such a claim is not entitled to injunctive relief. *Moniz v. Cox*, 512 F. App'x 495, 499 (6th Cir. 2013) (affirming the district court's ruling that plaintiff had no right to injunctive relief under a respondeat superior theory of liability because "[plaintiff] has not presented any specific factual allegations regarding how [defendant] violated [plaintiff's] constitutional rights" even though "[plaintiff] has alleged that [defendant] failed to investigate, supervise, and correct misconduct by [his subordinates]"); *Brittenham v. Mail Room*, No. 10-10478, 2010 WL 1438777 at * 2 (E.D. Mich. April 9, 2010) (dismissing complaint seeking injunctive relief for, among other reasons, the plaintiff's failure to show that "the named defendant was personally involved in the alleged misconduct" as "respondeat superior or vicarious liability is not a basis for relief in a civil rights action"). Therefore, Plaintiff's claim for injunctive relief from these Defendants is dismissed.

Further, Plaintiff's action for injunctive relief "to conform [Defendants'] conduct to the First, Eighth and Fourteenth Amendments to the United States Constitution" can be dismissed on additional grounds. (D.E. 18 at PageID 142.) The claim is a broad request to enjoin Defendants from violating his rights that lacks specificity as to what constitutional rights are being infringed. As the Sixth Circuit held in *Coleman v. Department of Rehabilitation and Corrections*, "an overbroad, blanket injunction enjoining [defendants] from violating prisoners' constitutional rights" is "cumulative of the Amendments themselves and unnecessary." 46 Fed. App'x. 765, 772-73 (6th Cir. 2002). Therefore, this request for injunctive relief is also denied and should be dismissed.

    A.  *Claims Against Parker*

Lucas alleged that "Commissioner Parker is familiar with PREA compliance failures within TDOC and with the poor performance of CoreCivic and Corizon." (D.E. 18 at ¶ 224.) According to Plaintiff, "[t]hrough his deputies and assistants (the "Doe" defendants, to be identified and named), Commissioner Parker is responsible for the consequences of his management of inmate health and safety and private vendor compliance with the law and the failures in same." (D.E. 18 at ¶ 225.) Plaintiff avers that "[h]e and his deputies and assistants have failed to train staff to protect the rights of LGBT inmates and prevent First Amendment retaliation." (D.E. 18 at ¶ 225.) He also claims that "[Parker] is personally responsible for the cut in staff for oversight of their contracts." (D.E. 18 at ¶ 224.) Finally, the inmate insists that Parker is answerable in damages in his individual capacity, and, in his official capacity, he is needed for any injunction to be effective due to Lucas' frequent transfers among TDOC prisons over the last several years. (D.E. 18 at ¶ 226.)

The Court will address each of Plaintiff's claims in the order presented.

1.  Failure to Train

Plaintiff insists that Parker "failed to train staff to protect the rights of LGBT inmates and prevent First Amendment retaliation." (D.E. 18 at ¶ 225.) According to the Defendant, this argument fails to state a claim upon which relief can be granted because Lucas' claims are based solely on the theory of respondeat superior. (D.E. 35 at PageID 290.) In his objections to the R&R, Defendant specifies that "[w]here there is no allegation of encouragement or direct participation in a specific incident of misconduct, the 'failure to train' claim against the State supervisor or policymaker fails." (D.E. 62 at PageID 541.)  In his response to Defendants' motion to dismiss, Plaintiff does not address Parker's arguments. (D.E. 41.)

Although a supervisor may still be held liable in his or her individual capacity under a failure-to-train theory, "1983 liability must be based on more than respondeat superior, or the right to control employees." *Shehee*, 199 F.3d at 300 (internal quotation marks and citation omitted). A Section 1983 plaintiff must identify an action taken by the supervisor to show that he or she enacted a policy that restricted the particular training at issue. *See Everson v. Leis,* 556 F.3d 484, 495 (6th Cir. 2009); *see also Phillips v. Roane County, Tenn.*, 534 F.3d 531, 544 (6th Cir. 2008).

Here, Lucas makes no specific claim against Parker with regard to training. He does not suggest, for example, that the Defendant enacted a policy that restricted training for dealing with LGBT inmates. In general terms, he argues in his complaint that Parker failed to train staff to protect the rights of LGBT inmates and prevent first amendment retaliation and is responsible for the actions of those who serve under him. This is the type of respondeat superior claim that case law has consistently held is not cognizable. *See e.g.*, *Everson,* 556 F.3d at 495 (explaining that Section 1983 liability must be premised on more than the ability to control one's employees); *Phillips*, 534 F.3d at 543 (same); *Shehee*, 99 F.3d at 300 (stating that a supervisor is not liable under Section 1983 for failing to train subordinates unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it."). Therefore, this claim will be dismissed.

2.   Reduction in Staff

Lucas next alleges that Parker "is personally responsible for the cut in staff for oversight of their contracts." (D.E. 18 at ¶ 224.)  It is unclear, however, how this allegation relates to the purported constitutional deprivations experienced by Plaintiff. Parker also fails to provide any further details connected to this claim. In his systemic" and pattern and practice allegations, Plaintiff points to an audit of TDOC's monitoring of CoreCivic's performance that criticizes

24

TDOC's elimination of "watchdog" employees for budgetary reasons. (D.E. 18 at ¶ 217.) However, Plaintiff fails to connect this contention to any of Plaintiff's alleged damages.

On the face of his amended complaint, these allegations are simply broad and conclusory and untethered to an injury experienced by Lucas and caused by Parker. Therefore, Plaintiff's averments fail to state a claim against Parker because the inmate has not connected the Defendant's alleged "personal[] responsib[ility] for the cut in staff for oversight of their contracts" to the harms claimed. *See Lillard v. Shelby Cnty. Bd. of Educ.,* 76 F.3d 716, 726 (6th Cir. 1996) ("[I]n the context of a civil rights claim, ... conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under section 1983.") (citation omitted). As such, Plaintiff's averments regarding Parker and reductions in staff should be dismissed.

## CONCLUSION

Based on the foregoing, the objections of Defendants to the R&R (D.E. 62) are GRANTED. The Court declines to accept Magistrate Judge Claxton's R&R (D.E. 59), and Defendants' motion to dismiss (D.E. 34) is GRANTED. Plaintiff's claims against Defendants Parker, Genovese, and Phillips are therefore DISMISSED.

IT IS SO ORDERED this 2nd day of March 2021.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE